IN RE REYNOLDS.

(Nos. C-810282 and C-810727—Decided May 19, 1982.)

*Mr. Robert L. Davis,* for William V. Reynolds.

*Mr. James C. Curry,* for Martha Lynne Reynolds.

DOAN, J. This case involves a custody dispute between divorced parents. In August 1978, William V. Reynolds, appellee, and Martha Lynne Reynolds, appellant, were divorced in the Kentucky Circuit Court of Clark County, Kentucky. Custody of their minor child, Kelly, was awarded to the mother. In October 1978, Mrs. Reynolds and Kelly moved from Kentucky to Hamilton County, Ohio. (Mrs. Reynolds subsequently remarried and will be hereinafter referred to as Mrs. Carovillano or appellant.) On June 19, 1979, Mr. Reynolds made a motion in the Clark County Circuit Court to modify the custody decree. The court denied the motion, stating that there had not been sufficient time to allow the custody situation to stabilize. On June 2, 1980, Mr.

Reynolds filed a complaint for custody in the Juvenile Division of the Court of Common Pleas of Hamilton County. By entry dated January 23, 1981, the court ordered that custody be placed with Mr. Reynolds but stayed the order until Mrs. Carovillano could be heard on her motion to reopen the case. After a final hearing on February 25, 1981, the court again ordered that custody be placed with the father. On March 26, 1981, the court modified the order such that the change of custody would not take place until the end of the school year on June 5, 1981. On August 14, 1981, Mrs. Carovillano moved the court to vacate the order transferring custody to Mr. Reynolds. The court refused to hear that motion since the case was on appeal to this court. Mrs. Carovillano has appealed from the February 25, 1981 entry granting custody to the father (case No. C-810282) and from the court's refusal on August 21, 1981, to hear her additional motion (case No. C-810727). The two appeals have been consolidated.

Appellant's first assignment of error alleges that she was denied due process of law because the tapes of two hearings before referees were lost. She claims that the tapes were vital because it was at those initial hearings that she first argued Ohio's lack of jurisdiction. Since she was later able to fully argue that issue before the juvenile court, we find no denial of appellant's due process rights.

The second and sixth assignments, raising essentially the same issue, will be considered together. Appellant argues that the juvenile court did not have jurisdiction to hear appellee's complaint for custody. She claims that the Uniform Child Custody Jurisdiction Act (UCCJA), codified in Ohio at R.C. 3109.21 *et seq.*, precludes the court from exercising jurisdiction in this custody dispute because there exists a custody decree from a Kentucky court. (Kentucky has enacted reciprocal provisions of the Act.) We do not agree.

R.C. 3109.22 provides four circumstances authorizing the exercise of jurisdiction:

"(A) No court of this state having jurisdiction to determine the custody of a child shall exercise that jurisdiction unless one of the following applies:

"(1) *This state is the home state of the child at the time of commencement of the proceeding,* or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) *It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state,* and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction." (Emphasis added.)

We find that the trial court properly relied on subsections (A)(1) and (2) of R.C. 3109.22 as the grounds for its exercise of jurisdiction. R.C. 3109.21(E) defines "home state" as "* * * the state in which the child, immediately preceding the time

involved, lived with his parents, [or] * * * parent * * * for at least six consecutive months * * *." Mrs. Carovillano and Kelly moved to Ohio almost two years prior to the commencement of Mr. Reynold's custody proceeding in Ohio. In addition, Kelly and her mother had a "significant connection" with Ohio. Kelly had lived here for some time; she had attended school here; and she and her mother had been receiving counselling from the Hyde Park Mental Health Services since December 1978.

R.C. 3109.31(A) is also relevant to the question of jurisdiction. It states:

"If a court of another state has made a custody decree, a court of this state shall not modify that decree, *unless it appears to the court of this state that the court that rendered the decree does not now have jurisdiction* under jurisdictional prerequisites substantially in accordance with sections 3109.21 and 3109.36 of the Revised Code, or has declined to assume jurisdiction to modify the decree, and the court of this state has jurisdiction." (Emphasis added.)

It appears to us that as of June 2, 1980 (the date Mr. Reynolds initiated proceedings in Ohio), Kentucky did not have jurisdiction under the then-controlling K.R.S. 403.260 (see 1976 Kentucky Acts, Chapter 241; cf. current K.R.S. 403.420). That section sets forth jurisdictional prerequisites substantially identical to those contained in R.C. 3109.22. Kentucky was not the child's home state nor had it been within six months before commencement of the proceedings. The child did not have a significant connection with Kentucky; since the divorce in 1978, she had only spent alternate weekends and the month of July at her father's home in Kentucky. Because of the length of time the child had lived in Ohio and her connection with Ohio schools and mental health services, Ohio had optimum access to relevant evidence about the child. It was in her best interests that litigation concerning her custody occur in this state. *In re*

*Wonderly* (1981), 67 Ohio St. 2d 178 [21 O.O.3d 111]. Finally, Kelly was not physically present in Kentucky, and Ohio had jurisdiction under prerequisites substantially in accordance with K.R.S. 403.260 (see 1976 Kentucky Acts, Chapter 241). The trial court was correct in finding it had jurisdiction over the custody dispute, and we overrule appellant's second and sixth assignments of error.

The third assignment of error alleges that the juvenile court referee erred when her October 17, 1980 report, which recommended that Kelly's custody remain with her mother, did not contain specific findings of fact and conclusions of law. Appellant argues that she was thus denied the rationale upon which the referee based her decision. Appellant is correct that before a court may adopt a referee's recommendation the report must contain a statement of facts sufficient to allow the court to make an independent analysis of the case. *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227 [14 O.O.3d 215]. See *Folsom* v. *Folsom* (July 23, 1980), Hamilton App. No. C-790443, unreported; *Pilot* v. *Pilot* (Oct. 22, 1980), Hamilton App. No. C-790674, unreported. However, we see no error prejudicial to appellant in the referee's failure to set forth a detailed rationale underlying her recommendation. After objections to the report were filed, the trial court held a full hearing on the custody issue, rejected the referee's recommendation, awarded custody to appellee, and on March 26, 1981, filed its own detailed findings of fact and conclusions of law. Although appellant may not have been aware of the reasons for the referee's recommendation that custody *remain* with her, that report was not adopted by the court. Appellant was aware of the reasons for the court's decision to change custody. Finding no prejudicial error to appellant, we overrule her third assignment of error.

Appellant's fourth assignment of error alleges that the court erred in sus-

taining appellee's objections to evidence as to his conduct after the parties were divorced. The court was well within its discretion in refusing to allow a relitigation of the original award of custody and properly limited the reception of evidence to events occurring after the original custody award was made on August 11, 1978.

The fifth assignment of error states that the court erred in overruling appellant's motion that Ohio was an inconvenient forum pursuant to R.C. 3109.25. Appellant and Kelly had resided in Hamilton County, Ohio, since October 1978, and it is impossible to see in what way Ohio was an inconvenient forum for appellant. The assignment of error is overruled.

The seventh assignment of error alleges that the court erred in overruling appellant's motion to order appellee and his second wife to submit to a psychological evaluation. This argument is without merit. The record reveals that, by entry of July 30, 1980, the court granted appellant's motion requesting that appellee have a psychological evaluation and that, at a hearing held on February 25, 1981, the court found that appellee had received such an evaluation. Under Juv. R. 32(A) the court did not abuse its discretion in refusing to order appellee's wife to undergo an evaluation.

In her eighth assignment of error, appellant states that the court failed to obtain all information available from the Clark County Circuit Court in Kentucky. R.C. 3109.36(B) provides:

"If a custody decree has been rendered in another state concerning a child involved in a custody proceeding pending in a court of this state, the court of this state upon taking jurisdiction of the case shall request of the court of the other state a certified copy of the transcript of any court record and other documents mentioned in division (A) of this section."

Appellant did not raise this objection below, and we will not consider it here. *Carrothers* v. *Hunter* (1970), 23 Ohio St. 2d 99, 102 [52 O.O.2d 392]. Furthermore, the juvenile court accepted into evidence certified copies of appellee's motion in Clark County to modify the custody decree and of the court's order overruling that motion. The assignment of error is overruled.

The ninth assignment of error alleges that the trial court erred in finding that there was a significant change of circumstances justifying a change of custody to the child's father. R.C. 3109.04 provided (see 137 Ohio Laws, Part I, 359, 361-362) in pertinent part:

"(B) The court shall not modify a prior custody decree unless it finds, based on facts which have arisen since the prior decree or which were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. * * *

"* * *

"(C) In determining the best interests of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"* * *

"(2) The wishes of the child regarding his custody if he is eleven years of age or older[.]"

There was ample testimony that at the time the parties were divorced, Kelly expressed a desire to live with her father rather than her mother. During the proceedings in Hamilton County, Ohio, she again voiced a preference to live with her father through her *guardian ad litem.* She expressed the same feelings to the referee and to the juvenile court judge. In conference with two psychologists and a social worker of the Hamilton County Welfare Department, she again stated that she wanted to live with her father. Psychologist Dr. Ellis Black stated in a report that Kelly had developed many

hostile feelings towards her mother and a profound sense of despair regarding her custody situation. The report also stated that Kelly consistently and strongly maintained that she wanted to live with her father. There was other testimony as to Kelly's deepening sense of frustration over her inability to convince anyone in authority to allow her to live with her father. We find that the trial court was correct in giving great weight to Kelly's preference (authorized under the statute since Kelly was eleven) and in recognizing a change in circumstances primarily consisting of a strengthening of her desire to live with her father. The ninth assignment of error is overruled.

The tenth assignment of error alleges that the court erred in refusing to hear appellant's August 14, 1981 motion to vacate the March 26, 1981 order transferring custody. Appellant appealed to this court on March 26, 1981. We hold that the trial court acted properly in refusing to take any action after the appeal was filed. *Vavrina* v. *Greczanik* (1974), 40 Ohio App. 2d 129 [69 O.O.2d 146]; *Majnaric* v. *Majnaric* (1975), 46 Ohio App. 2d 157 [75 O.O.2d 250]. The assignment of error is accordingly overruled and the judgment below is affirmed.

*Judgment affirmed.*

PALMER, P.J., and BLACK, J., concur.