**Cyril R. WANAMAKER, Appellant,**

v.

**Judith Lee SCOTT (Wanamaker), Appellee.**

**No. S–2841.**

Supreme Court of Alaska.

March 2, 1990.

David C. Crosby, Council & Crosby, Juneau, for appellant.

Anthony M. Sholty, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Justice.

INTRODUCTION.

Randy Wanamaker appeals from the attorney's fees portion of the superior court's modification order which granted his for-

---

mer wife, Judith Scott, custody of their minor child. He does not contest the change of custody.

Randy argues that the superior court lacked subject matter jurisdiction as to the modification motion under the Uniform Child Custody Jurisdiction Act, AS 25.30.-010–.910 (UCCJA), and the federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (PKPA). It is Randy's position that Washington, the state in which the original custody decree was issued, has "continuing jurisdiction" to the exclusion of the courts of Alaska. In regard to the award of attorney's fees, Randy contends that the court abused its discretion in holding he exhibited "bad faith and vexatious conduct" in opposing Judith's motion to change custody.

FACTS.

In 1976 the parties obtained a divorce in the state of Washington. Custody of their 2½ year old child, Jennifer, was awarded to Judith. Randy subsequently moved from Washington to Juneau. In 1981 Randy obtained a custody modification order from the Washington Superior Court which awarded him custody of Jennifer.[1]

Between 1981 and 1987 Jennifer lived with Randy in Juneau. Throughout this 1981–1987 period Jennifer visited with her mother for about three to four weeks per year in Washington, with about two to three weeks of this being summer visitation. Judith resided in the Seattle area from 1981 at least through May of 1987.

In December of 1986 Randy filed a motion in the superior court of Alaska to modify Judith's visitation so that it would not take place in the presence of Carlos Rojas, who had since been divorced from Judith. The parties stipulated in May of 1987 that visitation would be conducted out of Rojas' presence. Then on May 18, 1987, Judith filed motions in the superior court of Alaska for modification of the 1981 Wash-

ington custody order and for temporary custody. Randy opposed these motions on substantive, not jurisdictional grounds.

The superior court denied Judith's motion for temporary custody, but subsequently granted Judith's motion to modify custody. The court awarded Judith custody of Jennifer because of its conclusion that Judith would better foster an open and loving parent-child relationship with the non-custodial parent, and that Jennifer had a strong preference to live with her mother. The court also found that the reasons which caused the Washington court to remove Jennifer from Judith's custody in 1981 no longer existed. Judith was also awarded $17,126.50 in full attorney's fees on the basis of Randy's "bad faith and vexatious conduct" in opposing the motion for change of custody.

Randy appeals on three grounds. First, he argues that under the Uniform Child Custody Jurisdiction Act the superior court improperly exercised subject matter jurisdiction. He argues that the UCCJA, which in relevant part has been enacted in Alaska and Washington, required the superior court to defer to Washington's "continuing" modification jurisdiction. Second, Randy contends that the federal Parental Kidnapping Prevention Act mandates the same conclusion. Finally, Randy takes the position that the superior court committed reversible error in finding that he exhibited "bad faith and vexatious conduct" in his opposition to Judith's motion to modify custody.

## I. DID THE SUPERIOR COURT HAVE JURISDICTION TO MODIFY THE CUSTODY PROVISIONS OF THE WASHINGTON DECREE?

The provisions of UCCJA, as adopted in Alaska and Washington, determine which court has subject matter jurisdiction over custody matters.[2] Briefly stat-

---

1. The basis for the modification award was: 1) domestic violence between Judith and her husband, Carlos Rojas; 2) an unstable childhood environment which was evidenced both by numerous residence changes, and the delegation by Judith of child-care responsibilities to other persons for extended periods of time; and 3) financial problems on the part of Judith.

2. See *Nicholaus v. Nicholaus,* 756 P.2d 1338, 1342 (Wyo.1988); *Gomez v. Gomez,* 86 A.D.2d 594, 446 N.Y.S.2d 127, 129 (1982), *aff'd,* 56

ed, the superior court lacked jurisdiction to modify the subject custody decree if, as of the date Alaska jurisdiction was invoked,[3] the Washington court retained jurisdiction to modify its original 1976 custody decree. AS 25.30.130(a);[4] *Szmyd v. Szmyd,* 641 P.2d 14, 16, 17 (Alaska 1982) (jurisdictional prerequisites of the UCCJA apply to motions before a superior court to modify custody decrees). As Washington is no longer Jennifer's home state, the essential inquiry is whether a Washington court would assume jurisdiction over the modification request pursuant to RCW 26.27.-030(1)(b):

RCW 26.27.030. Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

. . . .

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

■ We conclude that on the facts before us the courts of Washington would have held that they lacked jurisdiction at the time Judith made her 1987 custody motion. Alaska, not Washington, then had

N.Y.2d 746, 452 N.Y.S.2d 13, 437 N.E.2d 272 (1982). As a court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived, and can be raised at any point during the litigation. *Mundy & Mundy, Inc. v. Adams,* 93 N.M. 534, 602 P.2d 1021, 1024 (1979); *see also Nicholaus,* 756 P.2d at 1342; *State v. Buckley,* 153 Ariz. 91, 734 P.2d 1047, 1049 (App.1987); *Gomez,* 446 N.Y.S.2d at 129. Thus, no matter how disingenuous it may be for a party which has previously invoked a state's jurisdiction later to challenge it in a related case, this court must ensure that the superior court's order is not "void." *See Nicholaus,* 756 P.2d at 1340, 1342. Neither the fact that Randy has previously attempted to invoke the superior court's jurisdiction to modify Judith's visitation privileges, nor the fact that Randy raises these jurisdictional issues for the first time on appeal obviates this court's responsibility to determine whether the superior court had subject matter jurisdiction.

**3.** Jurisdiction is evaluated as of the date invoked—May 18, 1987 in the case at bar. *See State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 278 (Mo.App.1987).

**4.** Alaska Statute 25.30.130(a) provides:

(a) If a court of another state has made a custody decree, a superior court of this state may not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree, and (2) the court of this state has jurisdiction.

Section 14 of the UCCJA is substantively identical.

The official commentary to section 14 reads in part as follows:

Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.

9 U.L.A. Child Custody Jurisdiction Act, § 14, at 292 (1988) (citations omitted).

the most significant connection to Jennifer. *In re Custody of Thorensen*, 46 Wash.App. 493, 730 P.2d 1380, 1388 (1987).

In *Thorensen* a child and two parents lived in Florida at least between 1976 (when the child was born) and 1980. *Id.* at 1382. A custody order was issued by a Florida court in favor of the mother in 1979. *Id.* The father then moved for modification in 1980, again in Florida. *Id.* The Florida court instead issued an order granting custody to the Florida Department of Health & Rehabilitative Services. This order was never enforced, as the mother had earlier fled the state with the child. *Id.* In 1986 the mother petitioned a Washington superior court to modify the 1980 order, and preclude enforcement of a related 1986 Florida order granting Thorensen temporary custody. *Id.* The Washington court asserted jurisdiction over the mother's motion to modify on grounds that the state of Washington had developed the most significant connections with the child. *Id.* at 1386, 1388. At the time of the modification motion the child had resided in Washington for the previous two years, and had not lived in Florida for five years. The *Thorensen* court noted that jurisdiction would vest in the court with the "maximum" contacts to the child, and concluded, "Florida court records from 5 years ago, when [the child] was only 4 years old, have little bearing on the present and future of the 10–year–old child with education records, medical records, and living arrangements in the state of Washington for the last 2 years." *Id.* at 1388. The *Thorensen* court concluded that Washington, the "home state," was the most appropriate forum.[5]

## II. WAS THE SUPERIOR COURT PRECLUDED FROM HEARING JUDITH'S MODIFICATION MOTION BY THE PROVISIONS OF THE FEDERAL PARENTAL KIDNAPPING PREVENTION ACT?

Under the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, a non-decree state court may not modify a custody order as long as the decree state has jurisdiction.[6] Since we have concluded that the Washington courts would not have jurisdiction, the federal bar does not apply.

## III. DID THE SUPERIOR COURT ERR IN AWARDING JUDITH FULL ATTORNEY'S FEES IN CONNECTION WITH THE MOTION TO MODIFY CUSTODY?

■ The superior court awarded Judith her full attorney's fees incurred in connection with the custody modification motion. The superior court's award was based on its finding that Randy had "engaged in bad faith and vexatious conduct in his attempts to retain custody" of his daughter.[7]

5. *See also* 9 U.L.A. Child Custody Jurisdiction Act, § 3, 144–45 (1988); *Trask v. Trask*, 104 N.M. 780, 727 P.2d 88, 91 (App.1986); *Olson v. Olson*, 64 Md.App. 154, 494 A.2d 737, 744 (1985); *Swire v. Swire*, 202 N.J.Super. 289, 494 A.2d 1035, 1039 (1985); *Hudson v. Hudson*, 35 Wash. App. 822, 670 P.2d 287, 292 (1983); *L.F. v. G.W.F.*, 183 N.J.Super. 195, 443 A.2d 751, 753–56 (1982); *In re Reynolds*, 2 Ohio App.3d 309, 441 N.E.2d 1141, 1144–45 (1982); *Siegel v. Siegel*, 84 Ill.2d 212, 49 Ill.Dec. 298, 417 N.E.2d 1312, 1313, 1317–19 (1981); *Hegler v. Hegler*, 383 So.2d 1134, 1135–37 (Fla.App.1980); *Pierce v. Pierce*, 287 N.W.2d 879, 883 (Iowa 1980); *Honigsberg v. Goad*, 550 S.W.2d 471, 472 (Ky.1976). *But see, e.g., Kendall v. Whalen*, 526 A.2d 588, 590 (Me. 1987); *Kumar v. Superior Court*, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1009 (1982); *Jefferson v. Downs*, 107 Misc.2d 852, 436 N.Y. S.2d 169, 171 (1981). *See generally* Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the Uniform Child Custody Jurisdiction Act*, 14 Fam.L.Q. 203 (1981); *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications*, 65 Cal.L.Rev. 978 (1977).

6. 28 U.S.C. § 1738A(f) reads:
   A court of a state may modify a [custody order of another state], if
   ....
   (2) the court of the other state no longer has jurisdiction....

7. The superior court found that Randy had attempted to mislead the court in regard to Jennifer's custodial preference, and his reasons for limiting Judith's visitations with Jennifer. Additionally, the superior court found that Randy had pressured Jennifer to change her custodial preference, and that Randy had mischaracterized a counselor's analysis of Jennifer's relationship with her mother. The court also found that Randy had been unreasonable in failing to transfer to Judith certain of Jennifer's bank records and personal belongings following entry of the custody modification order. The superior court further found that Randy's "obduracy" made court intervention on this issue necessary.

In motions to amend or enforce a visitation or custody order, attorney's fees will be assessed only against litigants who have acted willfully and without just excuse. *See L.L.M. v. P.M.*, 754 P.2d 262, 265 (Alaska 1988). Our review of the record in this case leads us to the conclusion that the superior court erred in its overall conclusion that an award of attorney's fees against Randy was appropriate.[8] Such a holding on these facts would run counter to the rationale we adopted in *L.L.M.*, that a party who reasonably and in good faith[9] believes his or her actions are justified by the best interests of the child[10] should not be deterred from taking appropriate action by the possibility of an award of attorney's fees and costs. 754 P.2d at 265.

AFFIRMED in part, REVERSED in part.

---

8. At the hearing on modification of custody, Randy testified that Jennifer "told me that she wanted to live with her mother as long as she could." However, Randy apparently felt Jennifer had been pressured and was confused. Against this background, his putting Jennifer's preference in issue was not vexatious or in bad faith. Neither did Randy's efforts to persuade Jennifer to consider options of shared custody amount, in this context, to undue pressure. Finally, we conclude that Randy's characterization of Jennifer's and Judith's "peer" relationship does find support in counselor Nancy Karcarand's affidavit. Our review of the record thus does not reveal support for the superior court's holding of bad faith and vexatious conduct by Randy in connection with the motion for modification. We note that Judith has recovered full attorney's fees on her motion to order transfer of Jennifer's property and records, which recovery is not at issue in this appeal.

9. At the close of the custody modification hearing the superior court announced its ruling, stating in part:

I think part of the reason for the disputes is simply a different appreciation by the listener of what is being said, what is being intended. That happens all the time, and there isn't any attempt to mislead or deceive or to lie.

Concerning Randy's motives, the superior court stated: "I don't consider him to be ill-motivated. I don't think that at all. I think he's always been well-motivated."

10. In its modification decision the superior court found in part, that:

Some six years ago, Randy and his present wife (Karen) took Jennifer as a then distraught child into their home, provided her with nurture and support, helped her to progress from failing grades to solid B's and A's, and with the assistance of counseling, helped her grow from a problem-bent child to an outgoing perky, self-confident teenager of advanced maturity. There is, therefore, no question that they are, in Ms. Karcarand's phrase, functionally competent parents. . . .