### A92A1751. GOUSE v. WILSON.
(428 SE2d 571)

BIRDSONG, Presiding Judge.

We granted this discretionary appeal to determine whether the trial court erred in dismissing appellant's petition for modification of a child custody decree. This action was dismissed because the Ohio divorce decree stipulated that the Ohio court "shall always retain exclusive continuing jurisdiction over the minor children. . . . [In] all future proceedings . . . Ohio shall be considered and always remain the home state . . . and neither party shall attempt to initiate any actions under the UCCJA . . . notwithstanding the fact that such minor children will reside in the State of Georgia or any other jurisdiction." Another paragraph provides that notwithstanding any change in residence of either party, the Ohio court "shall always be the controlling court and retain jurisdiction over all minor children. . . ."

Appellant mother and her two youngest children have been residents of Georgia since 1988; these children have thus lived in Georgia for most of their lives. The children's maternal grandparents and other family live in Georgia. Appellant has remarried and apparently maintains a secure lifestyle in Savannah. The children involved in this custody matter have a new baby half-sister in Savannah. After appellant filed this modification action in Georgia, appellee-father filed an action in Ohio, seeking to have appellant held in contempt for filing this action in Georgia. The Georgia court first assumed jurisdiction of this action under the Uniform Child Custody Jurisdiction Act (UCCJA), OCGA § 19-9-40 et seq., but dismissed it after the Ohio court ruled appellant in contempt. *Held*:

1. The trial court erred in dismissing this action. The Ohio court's attempt to retain jurisdiction of the matter of child custody is a nullity. *Buck v. Buck*, 238 Ga. 540 (233 SE2d 792) and cases cited. Such provision is a nullity even though it is based on the agreement of the parties. *Banister v. Banister*, 240 Ga. 513, 514 (241 SE2d 247).

Appellee contends this rule does not apply to a determination under the UCCJA, but it applies even more so in such a case, for a decree which attempts to retain jurisdiction of custody matters contravenes the letter and the spirit of the UCCJA; such provision in a decree is therefore not entitled to recognition in this state in the first instance. See OCGA § 19-9-53. Jurisdiction of interstate custody disputes is controlled in this state by the UCCJA. An attempt to predetermine the "home state" is a circumvention of the UCCJA, and is an attempt to deprive this state of its lawful jurisdiction of its citizens according to the Act. See OCGA §§ 19-9-43 and 19-9-54.

Appellee contends that § 19-9-54, as to modification of a decree of another state, requires us to defer to the foreign state's jurisdiction whenever it retained jurisdiction for the entry of future orders. This is not so, and *Mercer v. Mercer*, 194 Ga. App. 846 (392 SE2d 41) does not say that it is. OCGA § 19-9-54 provides that a Georgia court may not modify a decree without first determining that the other court does not have jurisdiction under the UCCJA or similar laws, or that the other state, having jurisdiction, declines to exercise it. The question whether a foreign state has jurisdiction must be considered in determining whether we have jurisdiction to modify its decree (*Mercer*, supra); but § 19-9-54 requires that a determination as to the other state's jurisdiction be made in accordance with the UCCJA. When we determine under the Georgia UCCJA that the other state does not have jurisdiction, we may assume jurisdiction. *Gordon v. Gordon*, 185 Ga. App. 100, 102 (363 SE2d 353). And, according to *Buck*, supra, nothing requires us to defer to the other state's null attempt to retain jurisdiction, particularly when the exercise of jurisdiction by that state is contrary to the UCCJA.

2. According to the provisions of OCGA § 19-9-43, the Georgia court has jurisdiction of this case under the facts. Appellee asserts that Georgia does not have jurisdiction because Ohio was the home state of all the parties' children at the time of the 1987 divorce, and continues to be the home state of two older children of the parties. This assertion is not pertinent to the question. The term "home state" refers to the home of the child for at least six months prior to the action. OCGA § 19-9-43 (a) (1). Appellee's other arguments, including that the children have a significant connection to Ohio because appellee lives there, are not persuasive. The trial court should have found that the Ohio court's attempt to retain jurisdiction is void; that the Ohio court does not have jurisdiction under its reciprocal laws (OCGA § 19-9-53; *Mercer*, supra); and that Georgia does have jurisdiction under the UCCJA. See OCGA § 19-9-43, which sets out the standard for that determination.

The Ohio court bases its jurisdiction on a 1988 consent order by which, on its face, appellant Gouse was held hostage either to remain

in Ohio or to submit to Ohio courts throughout her children's minority regardless where she and they lived and however tenuous became their connections with Ohio. The Ohio court, in finding appellant in contempt for filing this modification petition in Georgia, went so far as to say that under that order "[appellant] was permitted" to remove herself and two of the minor children to Georgia, "upon [condition] that [the Ohio court] shall always retain exclusive continuing jurisdiction over the minor children during each child's minority. For purposes of all future proceedings, Ohio law shall exclusively apply and Ohio shall be considered and always remain the home state, and the state of the most significant connections, and neither party shall attempt to initiate any actions under the UCCJA . . . of any other jurisdiction notwithstanding the fact that such minor children will reside in the State of Georgia or any other jurisdiction. Any party seeking judicial review of any future dispute . . . shall initiate such review . . . only through the [Ohio court]."

OCGA § 19-9-53 requires us to give full faith and credit to the initial decree of another state which "had assumed jurisdiction under statutory provisions substantially in accordance with this article or which was made under factual circumstances meeting the jurisdictional standards of [the UCCJA]." Obviously Ohio's attempt to retain exclusive jurisdiction is not "substantially in accordance with [the UCCJA]" or under facts meeting the standards of the UCCJA.

Although the Ohio court asserts that independent of the consent order it has jurisdiction under the UCCJA, this is not so: Section 19-9-46 of the UCCJA prohibits Ohio from exercising UCCJA jurisdiction because this custody proceeding was "pending in [Georgia] exercising jurisdiction substantially in conformity with [the UCCJA]." When appellant Gouse filed this modification proceeding in Georgia, no proceeding concerning the custody of the children was pending in Ohio and the Georgia court properly exercised its jurisdiction under the UCCJA. Under the UCCJA, Ohio was then prohibited from exercising UCCJA jurisdiction. Its attempt to retain perpetual jurisdiction of these children by an initial decree allowing appellant to move to Georgia only on condition that she submit eternally to the jurisdiction of Ohio is essentially unconstitutional for preventing appellant and her children from living wherever appellant, who has legal custody, chooses.

Moreover, the Ohio court's attempt to bind appellant and her children hostage to the control of Ohio courts is contrary to the express terms and policies of the UCCJA, which necessarily recognizes that persons may not constitutionally be restrained to reside in a particular place, and which determines jurisdiction based on factual circumstances promoting the child's best interests and stability. OCGA § 19-9-41. If Ohio is a reciprocal state to the UCCJA, its court will

not insist on holding appellant hostage to an essentially unconstitutional "consent order" which prevents her freedom of choice to live where she will, and which at the same time, by pre-establishing exclusive jurisdiction, obliterates the UCCJA. Thus, for these reasons, we cannot recognize the Ohio court's attempt to retain jurisdiction, for it is not made substantially in accordance with the UCCJA. OCGA § 19-9-53.

Moreover, since a modification proceeding was pending in this state and we had assumed jurisdiction substantially in accordance with the terms of the UCCJA (§ 19-9-46 (a)), the Ohio court was without authority to entertain appellee's petition for contempt, and we cannot recognize the Ohio court's finding in that regard.

Appellee also insists that "only OCGA § 19-9-54 is determinative in a modification proceeding and . . . home state status is not the test in such a proceeding"; and that we cannot retain jurisdiction without first determining why Ohio does not have jurisdiction as a matter of law separate from the agreed retention of jurisdiction. In fact, the finding that a Georgia court has jurisdiction under OCGA § 19-9-43 is a determination that Ohio "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with [our UCCJA]." OCGA § 19-9-54 (a) (1). Nothing in that Code section prevents appellant from bringing a petition in Georgia for the modification of an Ohio decree: OCGA § 19-9-54 (a) (1) expressly permits a modification proceeding when the former state "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with [the UCCJA]."

Thus, Ohio's attempt to retain jurisdiction contravenes the terms of the UCCJA, for a proceeding for modification was pending in Georgia when Ohio entertained appellee's contempt action (§ 19-9-46); Ohio therefore cannot claim jurisdiction in accordance with the UCCJA. Its claim of jurisdiction based on an essentially unconstitutional provision in the initial decree cannot be recognized, nor is it in accordance with the UCCJA. That appellee threatens that Ohio will retain jurisdiction and will issue conflicting orders does not influence this court to ignore the law, for if Ohio is a reciprocal state of the UCCJA, it is bound to recognize our legitimate exercise of jurisdiction in the first instance (see § 19-9-46) and will not hold appellant hostage to an unconstitutional consent decree attempting to vest exclusive jurisdiction in Ohio in direct contravention of the UCCJA.

Finally, appellee's generalized reference to the federal Parental Kidnapping Prevention Act (PKPA) is out of place. There is no "kidnapping" involved here and appellee does not show how or why a federal law relative to kidnapping would supervene the UCCJA in this case. Appellee asserts the PKPA would resolve the conflict of jurisdiction, but if the UCCJA provision prohibiting Ohio from exercising ju-

risdiction when there was a pending proceeding in the jurisdiction of Georgia (§ 19-9-46) had been honored by the Ohio court, there would be no such conflict of jurisdiction.

The trial court erred in dismissing this action.

*Judgment reversed. Beasley and Andrews, JJ., concur.*

DECIDED JANUARY 13, 1993 —
RECONSIDERATION DENIED MARCH 3, 1993 — 

*Duffy & Feemster, Dwight T. Feemster, Ronald K. Thompson,* for appellant.

*McCorkle, Pedigo & Johnson, Carl S. Pedigo, Jr.,* for appellee.