S93G0890. WILSON v. GOUSE.
(441 SE2d 57)

FLETCHER, Justice.

We granted certiorari in this interstate child custody dispute from the Court of Appeals' determination that the Chatham County Superior Court has subject-matter jurisdiction to modify an Ohio child custody decree. See *Gouse v. Wilson*, 207 Ga. App. 574 (428 SE2d 571) (1993). At issue is whether the Parental Kidnapping Prevention Act (the "PKPA"), 28 USC § 1738A, applies to the determination of whether a court has jurisdiction to modify a child custody

order of a sister state and whether the Chatham County Superior Court had such jurisdiction here. We find the PKPA applies in all interstate child custody disputes and that the applicable statutory provisions place subject-matter jurisdiction over the modification of the Ohio custody order at issue in the Georgia courts.

The parties were divorced in 1987 by an Ohio decree awarding custody of their two youngest children to their mother who is now Sue Simpson Gouse. The decree provided that neither parent could remove the children[1] from Ohio without a court order or the other parent's written consent and that the Ohio court would retain continuing jurisdiction of the minor children. One year later, Gouse sought and received the court's permission to move the two children in her custody to Savannah, Georgia. The court entered an order which again provided that the Ohio court would retain exclusive continuing jurisdiction over the minor children and neither party would initiate an action to modify the custody order in another jurisdiction.

In 1991, after residing in Georgia for over three years and at a time when no actions were pending in the Ohio courts, Gouse filed a petition in the Chatham County Superior Court to modify James Wilson's visitation privileges. The Chatham County Superior Court held it had jurisdiction to modify the Ohio custody decree under OCGA § 19-9-40 et seq., Georgia's version of the Uniform Child Custody Jurisdiction Act (the "UCCJA") on several grounds, including the fact that Georgia was the children's home state and because the children and the modification action had significant connections with the state of Georgia. Subsequently, Wilson filed an action for contempt in Ohio. The Ohio court held Gouse in contempt of its order for filing the Georgia modification action and summarily concluded that it had exclusive jurisdiction to modify its custody decree under the UCCJA, the PKPA, and its 1988 order. The Chatham County Superior Court dismissed Gouse's modification action on the ground that the Ohio court had continuing jurisdiction to modify its custody order.

The Court of Appeals reversed, ruling under Georgia law that Georgia courts had jurisdiction to modify the Ohio child custody order and that Ohio's attempt to retain exclusive and continuing jurisdiction was invalid. The Court of Appeals did not consider the PKPA in determining that Georgia had jurisdiction because it believed the federal statute applied to interstate jurisdictional disputes only where a child had been kidnapped. On appeal, Wilson contends that the PKPA controls in every action where there is an interstate custody dispute and, under its express jurisdictional rules, an originating

---

[1] The parties had four children. Custody of the two oldest children was awarded to their father, James Wilson.

court retains jurisdiction until the child and all parties no longer reside in the state. Gouse argues that the PKPA does not apply but even if it did, Georgia has jurisdiction because it is the children's home state and because the children have a significant connection with this state.

1. As a preliminary matter, we find the PKPA applies in all interstate child custody disputes. Before Congress enacted the PKPA, there was much confusion surrounding interstate custody disputes. The confusion resulted in conflicting custody orders among the states and provided an incentive to a parent to remove their child from one state and shop for a forum in another state likely to enter a different custody order. See *Thompson v. Thompson*, 484 U. S. 174, 181 (108 SC 513, 98 LE2d 512) (1988). In an attempt to promulgate uniform rules for determining child custody jurisdiction, states adopted the UCCJA which included specific provisions giving exclusive and continuing jurisdiction to the state issuing the initial decree so long as that state continued to satisfy certain jurisdictional requirements. As applied, however, the UCCJA was an imperfect remedy because courts differed in their interpretation of the UCCJA's jurisdictional requirements and many states that adopted the UCCJA made substantive modifications which diluted the uniformity the UCCJA was intended to promote.

Recognizing the failure of the UCCJA, Congress enacted the PKPA to put in place a uniform federal statute which provides clear guidelines for determining jurisdiction over interstate child custody disputes. *Thompson*, 484 U. S. at 181. In essence, the PKPA imposes on states a federal duty, under standards derived from the UCCJA, to give full faith and credit to a custody decree of a sister state. Id.

Based on this historical analysis, and in the complete absence of any language restricting the applicability of the PKPA to circumstances in which a child is kidnapped, we hold that the PKPA was intended not only to apply where a child was abducted by a parent and removed to another state but to remedy what was widely considered to be the inapplicability of the full faith and credit statute to child custody orders.[2] *Thompson*, 484 U. S. at 181 (the "context of the PKPA therefore suggests that the principal problem Congress was seeking to remedy was the inapplicability of full faith and credit requirements to custody determinations"); see Pub. L. 96-611, Sec. 7 (c)

---

[2] Our holding is further supported by the placement of 28 USC § 1738A. This statute, although commonly referred to as the PKPA, is codified under the title "Full faith and credit given to child custody determinations" and is an addendum to the more general full faith and credit statute requiring states to give preclusive effect to the judicial proceedings of sister states, 28 USC § 1738. See *Thompson*, 484 U. S. at 183 (language and placement of § 1738A alone is strong proof that it is intended to have the same operative effect as the full faith and credit statute).

setting forth six independent declarations of the purpose of the PKPA. We therefore disapprove of that portion of the Court of Appeals' opinion that is inconsistent with our holding in this division.

2. Having determined that the PKPA provides the jurisdictional criteria to be followed in all interstate child custody disputes, we turn to the statute itself. Section 1738A (f) limits when a state, which would otherwise have jurisdiction over a child custody dispute, may modify the custody order of another state:

> (f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

Subsection (d) provides for continuing jurisdiction of a court of a state which has made a child custody determination consistent with the provisions of the PKPA as long as the court continues to have jurisdiction over the matter under its own state's laws and such state remains the residence of the child or of any contestant.[3]

There is no question here that the Ohio court had proper jurisdiction when it entered the initial custody decree and that it has refused to voluntarily relinquish jurisdiction over any determination effecting the custody of the Wilson children who reside in Georgia. Nor is there any dispute that Wilson remains a resident of the state of Ohio or that absent the jurisdiction of the Ohio court, the Chatham County Superior Court could exercise jurisdiction as a court in the children's home state. See OCGA § 19-9-43; 28 USC § 1738A (b) (4) and (c). The only issue then is whether the Ohio court properly claims exclusive and continuing jurisdiction under its own laws to modify its custody order.[4] In making such a determination, we take particular

---

[3] Contrary to Wilson's arguments, jurisdiction does not remain in the trial court where the divorce was granted so long as any party to the divorce or the child still resides in that state. By its express terms, § 1738A (d) establishes a two-prong test for determining whether the jurisdiction of a state court which has made a child custody determination consistent with the PKPA is continuing. Failure to satisfy either prong defeats a court's continuing jurisdiction.

[4] Although the Ohio trial court determined without reference to either the facts or applicable law that it has subject-matter jurisdiction, such determination does not foreclose an inquiry into the Ohio court's jurisdiction by this court. Section 1738A (f) implicitly imposes upon a court an independent obligation to determine whether the state which made the ini-

notice, as has the Ohio Supreme Court, of the Commissioner's Note to section three of the UCCJA which states in part:

> Paragraph (2) [ORC § 3109.22(A) (2)] perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1 [ORC § 3109.22(A) (1)]. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact descriptions. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: *jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties,* to determine custody in a particular state. *The interest of the child is served when the forum has optimum access to relevant evidence about the child and family.* There must be maximum rather than minimum contact with the state.

(Emphasis supplied.) Notes of the Nat. Conference of Commissioners on Uniform State Laws, 9 Uniform Laws Ann. at 124 (1973) as quoted in *In re Wonderly*, 423 NE2d 420, 424 (Ohio S.Ct. 1981).

3. The UCCJA was adopted in Ohio and codified at ORC §§ 3109.21 through 3109.37 for the express purpose of avoiding

> jurisdictional competition and conflict with the courts of other states and [assuring] that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child.

*Wonderly*, supra at 422. Under Ohio's statutory scheme, an Ohio court has jurisdiction to modify its earlier custody decree only if one of the following applies:

> (1) [Ohio] is the home state[5] of the child at the time of commencement of the proceeding, or [Ohio] had been the child's home state within six months before commencement of the

---

tial child custody determination continues to have jurisdiction under its own jurisdictional laws. See *In re Reynolds*, 441 NE2d 1141 (Ohio App. 1982) (Ohio court exercised jurisdiction over custody dispute after finding sister state that made the initial child custody determination no longer had jurisdiction); *Perez v. Perez*, 561 A2d 907 (Conn. S.Ct. 1989) (holding Commonwealth of Puerto Rico incorrectly determined it had subject-matter jurisdiction over custody dispute and Connecticut court's exercise of jurisdiction was, therefore, proper).

[5] ORC § 3109.21 (E) defines "home state" as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . ." See 28 USC § 1738A (b) (4) similarly defining "home state."

proceeding and the child is absent from [Ohio] because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in [Ohio];

(2) It is in the best interest of the child that a court of [Ohio] assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with [Ohio], and there is available in [Ohio] substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) The child is physically present in [Ohio] and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A) (1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that [Ohio] is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that [Ohio] assume jurisdiction.

ORC § 3109.22 (A) (Supp. 1992).

It is undisputed that Georgia is the children's "home state." Accordingly, the only possible basis for the Ohio court's exercise of jurisdiction is ORC § 3109.22 (A) (2) and our inquiry is further limited to the determination of whether Ohio has a significant connection to and substantial evidence about the children, thereby establishing Ohio as "the forum with optimum access to relevant evidence about the [children] and family." *Wonderly,* supra.

The Wilson children moved from Ohio in 1988 at the ages of four and seven. At the time Gouse filed her petition for modification in the Georgia court, only Wilson himself and one older child continued to live in Ohio, the eldest Wilson child having left Ohio to attend Georgia Institute of Technology in Atlanta. Although Wilson was granted and exercises visitation rights, there is at least some evidence that much of the visitation occurs not in Ohio but in Hilton Head, South Carolina, or at the home of Wilson's parents in Gainesville, Georgia, or at Lake Rabun, Georgia. Therefore, the only connection between the children, this matter, and the state of Ohio is Wilson's continued residence in that state and the fact that court documents from prior custody proceedings are located there.

In contrast to Ohio's minimal connections, Georgia's connection to the children, their family, and the modification action is substan-

tial. The children have resided in Georgia since 1988 and have become involved in numerous school, religious and extracurricular activities in their community. Their mother, step-father, half-sister, maternal and paternal grandparents and at least one aunt also reside in the state of Georgia. Equally as important to our determination, however, is the fact that the modification action is based on Gouse's allegations that repeated mental and emotional pressures exerted upon the children by their father have caused them to suffer from clinical depression and learning difficulties. Gouse's allegations are supported by the children's doctor's conclusions after months of therapy. Because of the nature of the allegations and the fact that most, if not all, of the relevant evidence concerning the children's present emotional and mental state is found in Georgia, applying Ohio law, we find it is in the children's best interest that Georgia, the state with maximum contact and optimum access to the relevant evidence, is the only forum with proper subject-matter jurisdiction. *In re Reynolds*, 441 NE2d 1141 (Ohio App. 1982); see *Adache v. Avellone*, 591 NE2d 420 (Ohio App. 1991) (court lacked jurisdiction over custody dispute where only connection with Ohio was father's residence in the state).

That the Ohio court no longer has jurisdiction is best illustrated in *Reynolds*, supra. In *Reynolds*, the parties were divorced in 1978 by a Kentucky decree awarding custody of their child to the mother. Shortly thereafter, the mother and child moved to Ohio. Two years later, the father filed a petition in Ohio for change of custody and the mother challenged the Ohio court's jurisdiction to modify the Kentucky decree. Under ORC § 3109.22 (A) (2), the court held Ohio was the state with significant connection to the child in that she had lived in Ohio for two years and attended school and received counseling in Ohio. 441 NE2d at 1144. The court further held that as a matter of law Kentucky did not have jurisdiction under the UCCJA because it was not the child's home state and no significant connection with Kentucky was established through the child's bi-monthly and summer visits to her father in Kentucky. Id. Consistent with the principles of jurisdiction set forth in *Reynolds*, we find the children's irregular visits with their father in Ohio are insufficient to confer jurisdiction in the Ohio court, especially in light of the children's strong connection with the state of Georgia and the abundant relevant evidence available only in Georgia.[6]

---

[6] With regard to the significance accorded to Ohio's only other connection, the fact that it entered the initial decree, we again find the Commissioner's Notes to the UCCJA helpful. Discussing continuing and modification jurisdiction, the notes provide:

The fact that the [Ohio] court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.

We also find *In re Wonderly*, supra, instructive. In that case, two orphan children, then residents of Ohio, were placed in the custody of an Indiana couple by virtue of an Ohio probate court order. Nine years later, the children's paternal grandparents, Ohio residents, sought to terminate the Indiana couple's guardianship of the children. An Ohio probate court granted the petition to terminate the guardianship relationship and the Ohio Supreme Court reversed.

Although for purposes of its opinion the Ohio Supreme Court assumed the Ohio probate court had concurrent jurisdiction and reversed on inconvenient forum grounds,[7] the court specifically found the Wonderly children had a significant connection to Indiana and that substantial evidence about the children was found in Indiana. Similar to the facts here, the Wonderly children had resided in Indiana for a number of years and their personal relationships, education, medical care and religious training all centered around Indiana. With respect to the children's connection with the state of Ohio, however, the court stated:

> it is not at all clear to us, based on this record, that the children have a significant connection to and that there is *substantial* evidence available in Ohio pertaining to their present and future well-being. . . . Reality and the underlying rationale of the Act compel us to conclude that Ohio's connection with this case has, over the past decade, grown tenuous.

*Wonderly*, supra at 425. Just as in *Wonderly*, the connection between the state of Ohio and the Wilsons has "grown tenuous" over the years.

4. Nor does the provision in the Ohio court's 1988 order purporting to retain exclusive and continuing jurisdiction over the Wilson children provide a proper basis for the Ohio court's exercise of jurisdiction. Such provision fails to recognize the limitations placed on a

---

Notes of the Nat. Conference on Uniform State Laws, 9 Uniform Laws Ann. at 154-155 (1979). This is consistent with the underlying principles and jurisdictional requirements found in both the PKPA and Ohio law demanding that a state have optimum access to relevant evidence.

[7] The court reversed on the ground that the trial court abused its discretion in not declining to exercise jurisdiction as an "inconvenient forum." See ORC § 3109.25. The court held, "the conclusion is inescapable that Indiana, not Ohio, is the more convenient and more appropriate state to determine any changes in the custody of the Wonderly children." Id. at 426. Therefore, faced with similar facts, the Ohio Supreme Court considered "inescapable" the conclusion that Indiana was the most appropriate forum to evaluate the children's physical, emotional, moral and educational environment. Id. Under the rule of *Wonderly*, the controlling decision of Ohio's highest court, we question whether the Ohio trial court here did not also abuse its discretion in failing to declare itself an inconvenient forum. See also *Mayor v. Mayor*, 595 NE2d 436 (Ohio App. 1991).

state's continuing jurisdiction by the PKPA, see 28 USC § 1738A (c) and (d), and neither the PKPA nor the UCCJA permit subject-matter jurisdiction to be conferred by stipulation, agreement or consent of the parties.

5. Because the Ohio court no longer had jurisdiction over the subject matter of this modification action, the Chatham County Superior Court was free under § 1738A (f) to modify the Ohio custody order and was correct when it initially assumed jurisdiction to do so.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in Divisions 1 and 2 and the judgment.*

DECIDED MARCH 9, 1994.

*McCorkle, Pedigo & Johnson, Carl S. Pedigo, Jr.,* for appellant.
*Duffy & Feemster, Dwight T. Feemster, Ronald K. Thompson, Jo Beth Gosdeck,* for appellee.