Appellant Carrie Nusbaumer is appealing the decision of the Stark County Court of Common Pleas, Juvenile Division, that denied her motion for change of custody of her minor son Joshua Nusbaumer. The following facts give rise to this appeal.
Joshua Nusbaumer was born on March 3, 1985, to appellant and Appellee William Cherry. The parties never married, however, paternity was established in 1987. Joshua resided with appellant from the time of his birth, until November, 1994, when the trial court changed custody to appellee. Appellant subsequently filed a motion for change of custody on December 4, 1995.
Following the filing of the motion for change of custody, the trial court ordered psychological testing of the parties and Joshua. Ted Rubin of Wingspread Counseling conducted the testing. The trial court conducted an evidentiary hearing on January 21, 1997, and April 23, 1997. During this hearing, the trial court interviewed Joshua in camera, with only the guardian ad litem present.
On August 13, 1997, the trial court issued its decision denying appellant's motion for change of custody. Appellant appealed the trial court's judgment entry to this court. On June 22, 1998, we issued our opinion remanding this matter, to the trial court, for the court to issue new findings of fact and conclusions of law that address the element of "change of circumstances".[1]
On August 25, 1998, the trial court issued its judgment entry on remand. The trial court determined there had not been a change of circumstances since the reallocation of parental rights on November 28, 1994, and denied appellant's motion for change of custody. Judgment Entry, Aug. 25, 1998, at 3. Appellant timely filed her notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE COURT ERRED IN FINDING THAT THERE WAS NO CHANGE IN CIRCUMSTANCES OF THE CHILD OR THE RESIDENTIAL PARENT SINCE THE PRIOR CUSTODY ORDER.
 II. THE COURT ERRED IN FAILING TO FIND THAT THE HARM THAT WOULD BE CAUSED TO THE CHILD BY A CHANGE OF ENVIRONMENT IS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE.
 III. THE COURT ERRED IN IGNORING THE RECOMMENDATIONS OF THE GUARDIAN AD LITEM AND THE PSYCHOLOGIST.
 IV. THE COURT ERRED IN FAILING TO DETERMINE THE CHILD'S WISHES AND DISREGARDING JOSHUA'S WISH TO LIVE WITH HIS MOTHER.
 V. THE COURT ERRED IN EXCLUDING THE TESTIMONY OF JOHN WATKINS AND THE CHILD'S STATEMENTS TO WATKINS.
 VI. THE COURT MADE ERRORS AND OMISSIONS IN ITS FINDINGS OF FACT, INCLUDING
 A. ERRONEOUSLY FINDING THAT APPELLANT FAILED TO TAKE THE CHILD TO COUNSELING;
 B. ERRONEOUSLY FINDING THAT JOSHUA HAD BEEN INCLUDED IN FAMILY COUNSELING WITH MR. RUBIN;
 C. OMITTING TO FIND THAT APPELLEE HAD AN ARREARAGE IN CHILD SUPPORT;
 D. OMITTING TO FIND THAT APPELLANT WAS NOT LIKELY TO IMPEDE VISITATION IN THE FUTURE.
 VII. THE COURT ERRED BY MAKING SPECIFIC ORDERS CONCERNING JOSHUA'S RELIGIOUS PRACTICES.
 I
Appellant contends, in her First Assignment of Error, the trial court erred in finding there was no change in circumstances of the child or the residential parent since the prior custody order. We disagree.
Pursuant to R.C. 3109.04(E)(1)(a), the trial court must make certain determinations when considering a motion for change of custody. This statute provides:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designations of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
An appellate court's standard of review in custody matters is abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71,74. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. We must look to the totality of the circumstances in the case subjudice to determine whether the trial court acted unreasonably, arbitrarily, or unconscionably.
The trial court determined there had not been a change of circumstances since the reallocation of parental rights. Appellant sets forth the following facts in support of her claim that there has been a change of circumstances: (1) Joshua is several years older; (2) Joshua has expressed his wish to live with appellant; (3) Joshua is unhappy residing with appellee; (4) Joshua has attended three different schools since the prior order; (5) Joshua has moved to a different community; (6) Joshua's doctor and dentist have been changed; (7) Joshua is enrolled in a different church; and (8) Joshua had to be re-enrolled in other extracurricular activities.
In support of this assignment of error, appellant cites to the case of In re Reynolds (1982), 2 Ohio App.3d 309. The court, in Reynolds, held that "* * * the trial court was correct in giving great weight to Kelly's preference (authorized under the statute since Kelly was eleven) and in recognizing a change in circumstances primarily consisting of a strengthening of her desire to live with her father." Id. at 312-313. Appellant relies on the Reynolds case to support her argument that the trial court should have given great weight to Joshua's wish to live with appellant.
The Ohio Supreme Court, in Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, explained that "* * * change must be a change of substance, not a slight or inconsequential change." Based on the facts presented to the trial court, in support of appellant's motion for change of custody, we find the trial court did not abuse its discretion when it determined there had not been a change in circumstances that would warrant a change in custody. The "changes" appellant cites to, in support of her motion for change of custody, are not of substance. Although Joshua has expressed his desire to live with appellant, this alone, does not warrant a change of circumstances.
R.C. 3109.04(F)(1)(a) through (j) sets forth the factors a trial court is to consider in determining the best interest of the child in making a custody determination. This statute provides, in pertinent part:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of the children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
R.C. 3109.04(F)(1)(b) addresses the child's wishes. However, it is merely one factor, in a list of ten factors, that a trial court must consider in determining the best interests of the child. Clearly, it is not the controlling factor and should not be the only factor upon which a trial court bases its decision. Further, there was no evidence, in the record, that Joshua has suffered academically or emotionally since his placement with appellee in 1994. Therefore, we conclude the trial court did not abuse its discretion when it found no change of circumstances entitling appellant to a change in custody.
Appellant's First Assignment of Error is overruled.
 II
Appellant maintains, in her Second Assignment of Error, the trial court erred in failing to find that the harm that would be caused to the child by a change of environment is outweighed by the advantages of the change. We disagree.
In support of the argument, appellant cites to R.C.3109.04(E)(1)(a)(iii) which we previously cited above. Appellant argues that based on the judgment entry, the trial court failed to state what the probable advantages and harm would be if the trial court granted custody to appellant.
Our interpretation R.C. 3109.04(E)(1) indicates the trial court does not need to address the weighing test concerning the harm versus the advantages, as a result in the change of environment, if the trial court does not first find a change of circumstances. Under R.C. 3109.04(E)(1)(a), the trial court must first find a change of circumstances and determine that the modification is necessary to serve the best interests of the child. A trial court can only change custody when it finds such a change would be in the best interests of the child and finds the harm likely to be caused by the change of environment is outweighed by the advantages of the change of environment.
Since the trial court did not find a change of circumstances, it was not necessary for the court to do the balancing test set forth in R.C. 3109.04(E)(1)(a)(iii).
Appellant's Second Assignment of Error is overruled.
 III
In her Third Assignment of Error, appellant claims the trial court erred in ignoring the recommendations of the guardianad litem and psychologist. We disagree.
After interviewing Joshua, the guardian ad litem concluded that it would be in Joshua's best interest for him to live with appellant because he is currently unhappy residing with appellee. Psychologist Ted Rubin reported that after conducting extensive testing, he found that Joshua rated appellant higher than appellee in areas of competency, supportiveness, consistency, and admirable character trait characteristics. Tr. at 21-23. Appellant argues the trial court failed to consider this evidence in denying appellant's motion for change of custody.
In its judgment entry of August 25, 1998, the trial court indicated it received and reviewed the report of the guardianad litem and also received testimony from psychologist Ted Rubin. Judgment Entry, Aug. 25, 1998, at 1. The fact that the trial court did not reach the same conclusion reached by the guardian ad litem and the psychologist does not mean the trial court ignored these recommendations. The Ohio Supreme Court explained, in Davis, that:
 * * * custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her — including many of the factors in this case — and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller
(1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Id. at 418.
Based on the Ohio Supreme Court's directive, inDavis, the trial court had wide latitude concerning the amount of weight he gave to the guardian ad litem's report and the testimony of psychologist Ted Rubin. We do not find the trial court abused this discretion.
Appellant's Third Assignment of Error is overruled.
 IV
In her Fourth Assignment of Error, appellant contends the trial court erred in failing to determine Joshua's wishes and disregarding his wish to live with appellant. We disagree.
In support of this assignment of error, appellant cites to R.C. 3109.04(B)(2)(b) which addresses the trial court's obligation to determine the child's wishes and concerns. Appellant argues the trial court failed to address Joshua's wishes and concerns, in violation of R.C. 3109.04(B)(2)(b), even though the trial court conducted an in camera interview of Joshua.
We find the trial court did not err in failing to address Joshua's wishes and concerns because pursuant to R.C.3109.04(B)(1), such a determination is made when determining the child's best interests. As noted in appellant's Second Assignment of Error, the trial court did not find a change in circumstances and therefore, did not have to proceed to make a best interest determination.
Appellant's Fourth Assignment of Error is overruled.
 V
In her Fifth Assignment of Error, appellant maintains the trial court erred in excluding the testimony of John Watkins and Joshua's statement to him. We disagree.
At the hearing in this matter, appellant called John Watkins to testify, a caseworker from the Stark County Department of Human Services. Mr. Watkins previously investigated a report of suspected abuse received by the department. As part of his investigation, Mr. Watkins spoke with Joshua on several occasions. Appellee moved to strike Mr. Watkins' testimony on the grounds that he is not a licensed social worker. Tr. at 73. The trial court granted appellee's motion. Tr. at 179. Although the trial court struck Mr. Watkins' testimony, it cited to some of Mr. Watkins' testimony in the judgment entry of August 25, 1998.
Appellant cannot assign as error, on appeal, the fact that the trial court struck Mr. Watkins' testimony because based on the trial court's judgment entry, it is apparent the trial court did consider his testimony.
Appellant also argues the trial court should not have excluded statements Joshua made to Mr. Watkins. However, in the trial court's judgment entry, the trial court noted that Mr. Watkins talked to Joshua on at least five different occasions and stated that Mr. Watkins always observed a "sad countenance" on Joshua's face. Judgment Entry, Aug. 25, 1998, at 2. Clearly, the trial court considered Mr. Watkins' testimony and statements Joshua made to Mr. Watkins as well as Mr. Watkins' observations of Joshua.
Appellant's Fifth Assignment of Error is overruled.
 VI
In her Sixth Assignment of Error, appellant contends the trial court made various errors and omissions in its findings of fact. We disagree.
Specifically, appellant cites to the following findings:
 (1) The trial court erroneously found that appellant failed to take the child to counseling.
 (2) The trial court erroneously found that Joshua has been included in family counseling with Mr. Rubin.
 (3) The trial court failed to find appellee had an arrearage in child support.
 (4) The trial court failed to find appellant was not likely to impede visitation in the future.
A. Appellant's Failure to Take Child to Counseling
In its judgment entry of August 25, 1998, the trial court stated: "The Court notes that Carrie Nusbaumer was found in contempt on August 30, 1993 for failure to enroll Joshua in counseling as ordered, and that the Court ordered in November of 1994, when William Cherry was designated as residential parent, that Joshua should continue in counseling." Appellant argues the trial court should not have used this event in support of its conclusion that appellee should be designated the residential parent.
However, we find the trial court can take judicial notice of appellant's contempt citation in August, 1993, as this is part of the record in this case. The trial court did not err when it included appellant's contempt citation in its findings of fact.
B. Inclusion of Child in Family Counseling
Appellant also argues the trial court incorrectly found that appellee and Joshua have been in counseling with Mr. Rubin from January through March, 1997. The record indicates this finding of fact is incorrect. Only appellant and appellee were in counseling with Mr. Rubin during this time period.
Although this finding of fact is incorrect, the record still supports the conclusion that through counseling, Joshua has been integrated into appellee's family. Appellee testified that he and Joshua went to seven therapy sessions with Bob Humphries of Fordyce Associates. Following the seventh session, Mr. Humphdes informed appellee that Joshua was fine and he did not need to continue with counseling. Tr. at 215.
We find the trial court's statement concerning Joshua's counseling with Ted Rubin to be harmless error. Other evidence, contained in the record, indicates Joshua did go to counseling and successfully completed counseling.
C. Appellee's Arrearage in Child Support
 D. Appellant Not Likely to Impede Visitation in the Future
In making a best interest determination pursuant to R.C. 3109.049(F)(1), the trial court is to consider whether either parent has failed to make all child support payments including arrearages. R.C. 3109.04(F)(1)(g). The trial court is also to consider the parent more likely to honor and facilitate visitation and companionship rights. R.C. 3109.04(F)(1)(f). As noted above, the trial court never reached the best interest determination, in the case sub judice, because it found no change of circumstances that would warrant a change in custody. Therefore, the trial court was not required to address these factors.
Appellant's Sixth Assignment of Error is overruled.
 VII
In her final assignment of error, appellant maintains the trial court erred in making specific orders concerning Joshua's religious practices. We disagree.
The trial court stated in the August 25, 1998 judgment entry: "* * * Joshua may observe the religious practices of the parent with whom he is having companionship when such occasions arise." (Emphasis added.) Appellant argues this language violates Joshua's First Amendment rights.
We find the language at issue does not order Joshua to go to church. It merely allows Joshua to observe the religious practices of the parent he is with on that particular weekend if he chooses to do so. Accordingly, we find no First Amendment violation.
Appellant's Seventh Assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, P. J., Hoffman, J., and Edwards, J., concur.
--------------------------
--------------------------
 -------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
--------------------------
--------------------------
--------------------------
JUDGES
[1] Nusbaumer v. Cherry (June 22, 1998), Stark App. No. 1997CA00324, unreported.