Jack O'NEAL, Appellee,

v.

Cindy O'NEAL, Appellant.

No. 68739.

Supreme Court of Iowa.

Feb. 16, 1983.

Francis J. Lange and Mary Lynn Neuhaus of Kaufman, Lange, Hodge & Neuhaus, Dubuque, for appellant.

Russell A. Neuwoehner of Zwack, Neuwoehner & Keutner, Dubuque, for appellee.

Considered by LeGRAND, P.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

McCORMICK, Justice.

In legal terms this case presents a jurisdictional problem under the Uniform Child Custody Jurisdiction Act (UCCJA), chapter 598A of the Iowa Code (1981). In human terms the case involves the tragedy of a child who has become a victim of parental strife over custody. The trial court held that it lacked jurisdiction of the custody dispute. We reverse because we find that the court had jurisdiction and should have exercised it.

The child involved in this case is named Michelle. She was born to defendant Cindy O'Neal in Illinois on January 28, 1975. Plaintiff Jack O'Neal is Michelle's father, although he and Cindy did not marry until May 5, 1979.

During her short lifetime Michelle has lived in more than twenty-five different homes. She has been moved by one or both of her parents from Illinois to Iowa, back to Illinois, to Missouri, to Georgia, back to Missouri, back to Georgia, back to Iowa, back to Illinois, back to Georgia, back to Illinois, back to Iowa, to California, to Arizona, back to Iowa, back to Illinois, to Oklahoma, and back to Iowa. She lived in more than one home in most of these states. Cindy and Jack separated and reconciled several times. They have not lived together, however, since Jack obtained a default divorce in Arizona on October 27, 1981. The record shows that Michelle has been passed back and forth between the parents pursuant either to parental agreement or abduction on numerous occasions.

The present case is a habeas corpus action initiated by Jack in April 1982 seeking to regain Michelle's custody on the strength of a custody award in the Arizona decree. The action was brought shortly after Cindy removed Michelle from Jack's sister's home in Illinois and brought her to Iowa. Upon return to the writ, Judge R.J. Curnan ordered Michelle placed in the temporary custody of the department of social services

pending hearing on the merits. In answering the petition, Cindy attacked the validity of the Arizona decree and asked for Michelle's custody. She later amended the answer to request modification of the decree to give her custody.

After considerable discovery a hearing was held before Judge L. John Degnan on June 15, 1982. A record was made concerning whether the court had or should exercise jurisdiction of the custody dispute under the UCCJA. At the conclusion of the hearing the court decided it did not have and in any event should not exercise UCCJA jurisdiction. The habeas corpus petition was sustained, and Cindy appealed. This court stayed the transfer of custody from the department of social services pending decision of the appeal.

Our review of the evidence on the jurisdictional issue is de novo. *See St. Clair v. Faulkner,* 305 N.W.2d 441, 445 (Iowa 1981). We will recite the relevant facts as we address the legal issues. Those issues concern the effect of the Arizona decree and the effect of the alleged April 1982 abduction of Michelle by Cindy.

I. *The Arizona decree.* The Arizona decree is entitled to recognition if it met the standard delineated in section 598A.13, Iowa Code (1981):

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter, or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

Authority to modify an out-of-state decree is governed by section 598A.14. Because we find that the trial court should not have recognized the Arizona decree, we do not reach the issue of the court's jurisdiction to modify it.

Applying the standard in section 598A.13 as explained in *Slidell v. Valentine,* 298 N.W.2d 599, 602–04 (Iowa 1980), we find Arizona did not assume jurisdiction under statutory provisions substantially in accordance with chapter 598A, nor did the factual circumstances meet the jurisdictional standards of that chapter.

Arizona has the UCCJA but has modified section 3(a)(1) to permit an Arizona court to take jurisdiction on the basis of the child's domicile in Arizona at the time of the proceeding. Ariz.Rev.Stat.Ann. § 25–331 (1973). Domicile is established in Arizona for purposes of a divorce action by showing ninety days of residence prior to commencement of the action. *Id.* § 25–312. Thus it is not necessary to establish that Arizona is the child's home state to assume jurisdiction under its version of section 3(a)(1). The record shows the Arizona court actually took jurisdiction on the basis of domicile in this instance. This provision is a substantial departure from the UCCJA. *See* Commissioner's Note to UCCJA § 3 ("Short-term presence in the state is not enough even though there may be an intent to stay longer, perhaps an intent to establish a technical 'domicile' for divorce or other purposes.").

Moreover, the facts did not provide a basis for assuming jurisdiction under the jurisdictional standards of chapter 598A. Jack and Michelle resided in Arizona for approximately three months before he commenced the action. During that period they lived in three different places. Jack worked only about two weeks, and Michelle was in school there for only six weeks. Section 598A.3(1)(a) does not provide a basis for jurisdiction because Arizona was not Michelle's home state. Section 598A.3(1)(b) does not apply because Jack and Michelle lacked a significant connection with Arizona and insufficient evidence was available there concerning Michelle's present and future care. Section 598A.3(1)(c) is inapposite because neither abandonment nor emergency existed. Finally, section 598A.3(1)(d) would not support jurisdiction because Iowa could meet at least the jurisdictional standard in section 598A.3(1)(b).

Section 598A.3(1)(d) would give Arizona jurisdiction if no other state would have jurisdiction on one of the other jurisdictional bases, or another state had declined to exercise jurisdiction on the ground Arizona was the more appropriate forum to determine custody, and it was in the best interest of the child for Arizona to assume jurisdiction. Thus if Iowa had jurisdiction under section 598A.3(1)(b) at the time the Arizona action was commenced, Arizona did not have jurisdiction under section 598A.3(1)(d). Section 598A.3(1)(b) provides the following basis for jurisdiction:

It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

The record shows Iowa would have had jurisdiction on this basis when Jack commenced the Arizona action.

As a matter of fact, Cindy commenced an Iowa dissolution action in May 1981 after Jack had left Arizona and returned Michelle to her. Jack filed an answer in the case, and it was pending when he went back to Arizona and obtained the default divorce there in October 1981. Jack admits he did not inform the Arizona court about the Iowa proceeding. He acknowledges he did not provide that court with any of the information described in section 598A.9.

Cindy has lived in Iowa continuously since early 1978. Michelle lived here from that time until Jack took her to California in November 1980. From there he took her to Arizona in January 1981. Jack had lived in Iowa with Michelle and Cindy most of the time Michelle was there except for brief periods of separation. At the time Jack commenced the Arizona action Iowa was the only state the parties had lived in long enough to establish a significant connection. Furthermore, the record shows Iowa had optimum access to relevant evidence about Michelle and the parents.

Therefore, in accordance with section 598A.13, the trial court should not have recognized and given effect to the Arizona custody decree.

II. *Jurisdiction in Iowa.* After commencing the Arizona action, Jack returned Michelle to Cindy in late April 1981 and went on to Illinois where he lived with his parents. In September 1981 he took Michelle from Cindy and returned to Arizona for approximately three months. Then he moved to Georgia for approximately three months, after which he returned to Illinois where he lived in April 1982 when Cindy took Michelle to Iowa without his permission.

■ This is a case that cries out for application of section 598A.3(1)(b) to give Iowa jurisdiction of the custody dispute. It presents the kind of problem the UCCJA is designed to solve. *See* § 598A.1. Michelle's best interests require that this state take charge of her welfare and resolve the custody controversy after full and fair hearing in which both parties have an opportunity to participate. Iowa is Cindy's home and has been Michelle's home to the extent she can be said to have had any one home. Jack lived and worked in Iowa long enough to obtain a driver's license, license cars, pay taxes, receive unemployment compensation, and hold jobs. Witnesses are available here who know the parties and are able to testify about their ability to care for Michelle. We hold that Iowa has jurisdiction of the custody issue under section 598A.3(1)(b).

■ We recognize that the trial court alternatively declined to exercise jurisdiction in accordance with section 598A.8 because of Cindy's misconduct in taking Michelle from Jack's custody in April 1982.

Section 598A.8(1) provides:

If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

This is a discretionary ground for denying jurisdiction. It is a codification of the "clean hands" doctrine and should not be used if doing so would jeopardize the welfare of the child. *Barcus v. Barcus,* 278 N.W.2d 646, 650 (Iowa 1979). In the circumstances of this case, we believe Michelle's welfare is clearly jeopardized by the court's application of the doctrine.

The trial court had jurisdiction of the custody dispute and should have exercised it. It is time for an Iowa court to determine upon the evidence which, if either, of these parents should have Michelle's custody. Her best interests demand this much, and she deserves no less.

REVERSED AND REMANDED.