In the Matter of the GUARDIANSHIP
OF T.H. and T.H., Minors, B.M.,
Mother, Appellant.

No. 98–921.

Supreme Court of Iowa.

Feb. 17, 1999.

Rehearing Denied March 8, 1999.

Michael J. Tulis, Legal Services Corporation of Iowa, Council Bluffs, for appellant.

Craig M. Dreismeier of Reilly, Petersen & Hannan, P.L.C., Council Bluffs, for appellee guardians.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

The question here is whether Iowa can claim jurisdiction to open guardianships for two minor children, or must yield to initial jurisdiction of Colorado. The rules incumbent on us demand that this jurisdictional issue must be first addressed before we can consider the best interests of the children. This requirement, though far from rare, is particularly distressing because, if we could reach them, the underlying merits strongly favor the order opening Iowa guardianships, which was based on a finding of Iowa jurisdiction. Under the clear rules though, because Colorado claimed and retains initial jurisdiction over the children, Iowa must yield.

Beverly Miller and David Higginbotham lived together for twelve troubled years until July of 1996. During this time they became parents of the two children involved here, Taletha born October 4, 1986, and Tyler born November 26, 1987. Miller and Higginbotham both admitted they abused alcohol and drugs. They moved to Florence, Colorado, in 1991 to seek a "fresh start." They purchased land there and put a mobile home on it. The living conditions were primitive; there were times when they did not even have electricity or running water.

Both Miller and Higginbotham have family ties in Council Bluffs, Iowa, and, during their first summer in Colorado Taletha and Tyler returned to spend time with family. These summer visits became annual affairs, certainly propitious ones for the children. Higginbotham's sisters testified about the "ritual" activities performed each summer when the children arrived for the visit. It was necessary to clean Taletha and Tyler,

give them new haircuts, replace unclean and tattered clothes, and provide new shoes that were the right size. One summer Tyler's boots had to be cut off. He also appeared with severe tooth cavities requiring treatment.

Miller and Higginbotham's relationship was stormy. Domestic violence occurred. Drug abuse continued. There were many separations and reconciliations. In 1990, at a time when Miller and Higginbotham were separated, Higginbotham's brother went to Colorado and brought the children back to Iowa. When the children were returned to Colorado, juvenile proceedings were instituted there and, in an order entered August 14, 1990, the Colorado court took jurisdiction and placed their legal and physical care in a local department of social services. Ten weeks later, on October 31, 1990, the court transferred legal and physical custody to their mother, expressly retaining jurisdiction.

On August 8, 1996, Higginbotham obtained a temporary restraining order against Miller in Colorado. Listed as "plaintiffs" in the proceeding were Higginbotham, Taletha and Tyler. He and Miller had separated again and he expressed concern that the children were once more going to end up in foster care. He testified that, during a quarrel one night, Miller took a shotgun and some shells from the house. Taletha and Tyler, in Iowa for their annual summer visit, remained here and Miller conceded that this was in their best interests. The children were not at the same grade level as the other children in their classes but they made significant improvements while in Iowa. Tyler was diagnosed then as having attention deficit disorder (ADD) for which he received treatment.

On September 23, 1996, following a hearing, the Colorado court made its restraining order permanent. On June 3, 1997, at the request of Miller, the same Colorado court removed the children from the terms of the restraining order.

Higginbotham and Miller continue to reside in Colorado. Higginbotham is on disability and Miller has her GED, and works as a certified Head Start teacher. She has married the father of her three oldest children who has been in prison twice.

In March of 1997 the Rutledges, who are sister and brother-in-law to Higginbotham, filed this application in Iowa seeking temporary and permanent guardianship. Following a hearing, the trial court entered an order appointing the petitioners guardians for both Taletha and Tyler. The order directed the parents to "seek a determination by a Colorado court of competent jurisdiction of their respective parental duties and obligations with respect to these children, including which parent should be the primary custodian of the children. Once such determination is made, the guardianship in this jurisdiction may be reviewed." Responding to Miller's motion under Iowa rule of civil procedure 179(b), the court claimed jurisdiction and acknowledged there is a preference for parents to act as guardians, but found the parents in this case were unsuitable. The matter is before us on Miller's appeal challenging Iowa's jurisdiction to appoint the guardians. Our scope of review in this equitable matter is de novo. Iowa R.App. P. 4.

I. Although the parties vigorously dispute their impact, they agree that the case turns on either or both of two related legislative acts, one federal and one state. In many ways the federal parental kidnapping prevention act of 1980 (28 U.S.C. § 1738A (1990)) [hereinafter PKPA] and the uniform child custody jurisdiction act (Iowa Code ch. 598A (1997)) [hereinafter UCCJA] cover the same ground and proceed from the same premise. They both address situations in our increasingly mobile society where state courts are called upon to rule in matters involving children who have already been the subject of rulings in courts of another state. Under both the PKPA and the UCCJA the premise is that a state court should not modify the decree of another state unless that other state no longer retains jurisdiction in the matter. 28 U.S.C. § 1738A(d); *In re Marriage of Cervetti*, 497 N.W.2d 897, 899–900 (Iowa 1993).[1] The PKPA is intended to extend the full faith and credit clause (Art. IV,

---

1. Because, for reasons we shall explain, the PKPA requires us to yield jurisdiction to the Colorado courts, we need not and do not explore the parties' claims under the UCCJA.

§ 1 of the United States Constitution) to custody determinations. *Thompson v. Thompson*, 484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512, 521 (1988).

The Iowa guardianship proceeding challenged here clearly qualifies as a "custody determination" under the PKPA. It was a "judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C. § 1738A(b)(3) (1997); *see also In re Guardianship of Sams*, 256 N.W.2d 570, 572 (Iowa 1977) (formation of guardianship was essentially a contest of child custody).

This custody determination is obviously confronted by the one entered in Colorado, originally in 1990, the one that gave Miller sole legal and physical custody of Taletha and Tyler. Certain requirements must be met under the PKPA before Iowa courts have jurisdiction to modify the Colorado order. Iowa must qualify as the children's "home state" by establishing that the children lived here for at least six months with their parents, a parent, or person acting as the parent. Iowa clearly qualifies as a home state under this test. There remain, however, other requirements. It must also appear that Colorado no longer has jurisdiction or has declined to exercise jurisdiction to modify its orders. 28 U.S.C. § 1738A(f)(1), (2).

The question then turns on whether Colorado continues to assert jurisdiction over Taletha and Tyler. In debating this issue the parties focus, not on the 1990 juvenile court order, but on the September 23, 1996, and June 3, 1997, El Paso County, Colorado, court domestic abuse orders regarding Taletha and Tyler. The Rutledges contend these orders do not stand in the way of Iowa jurisdiction because, they contend, the orders do not qualify as "custody determinations." They cite Colorado authority (the point is disputed by Miller) they think supports their contention that Colorado courts lacked authority to enter a restraining order for the benefit of minor children. That is, they argue that orders for the benefit of Colorado children should have been consigned to juvenile court, and not entered—as was the case—in domestic court. *See G.B. v. Arapa-*hoe *County Ct.*, 890 P.2d 1153, 1157 n. 7 (Colo.1995). The argument continues: "With this being the case, it is clear that the Colorado court did not have jurisdiction to enter a restraining [order] naming the minor children herein as parties to that proceeding."

We are a good deal less convinced than the Rutledges concerning the Colorado court's lack of authority to enter the restraining order, but we will not further explore the question. We do not see it as our role, in resolving PKPA disputes, to resolve challenges to the authority of a sister state's courts to issue orders. We cannot and do not sit in review of Colorado courts. The Colorado court purported to enter its order involving children over which courts of that state had claimed jurisdiction for several years. We think the jurisdiction claimed by Colorado bars Iowa jurisdiction. The petition for guardianship should have been dismissed.

**REVERSED AND REMANDED.**