Upon the Petition of Karna Leigh
JORGENSEN, Appellee,

and

Concerning Maurice Joseph
Vargas, Appellant.

No. 98–1385.

Supreme Court of Iowa.

March 21, 2001.

Rehearing Denied May 30, 2001.

Maurice J. Vargas, Babylon, NY, pro se.

Diane L. Dornburg, Des Moines, for appellee.

LAVORATO, Chief Justice.

Maurice Joseph Vargas appealed from a district court judgment modifying a custody provision of a New York judgment of divorce from Karna Leigh Jorgensen. Vargas contended that, under Iowa Code chapter 598A (1997), the Uniform Child Custody Jurisdiction Act (UCCJA), the Iowa district court lacked subject matter jurisdiction to modify the New York judgment. We transferred the case to the court of appeals, which reversed and dismissed Jorgensen's application for modification. On further review, we vacate the court of appeals decision and affirm the district court judgment.

## I. Background Facts and Proceedings.

Maurice and Karna were married in California on August 1, 1985. The following month the couple moved to New York. Their child, Isaiah, was born on December 10, 1989.

In July 1992, Karna left Maurice. She and Isaiah came to Iowa, where Karna was born and graduated from high school. A month later, Karna and Isaiah returned to New York, where they stayed in a shelter for a brief time. In October, mother and son stayed with a friend before returning home to Maurice.

In January 1993, Karna and Isaiah—with Maurice's knowledge—moved to Iowa, where Karna and Isaiah have resided ever since.

Meanwhile, in November 1993, Maurice filed for divorce in the Supreme Court of New York, County of Dutchess. Prior to that time, in September 1993, he filed a petition for custody in the Family Court of New York, County of Dutchess. The parties reached a settlement of the divorce action and entered into a stipulation providing for joint legal custody of Isaiah with a schedule specifying visitation in alternating periods of time.

On May 25, 1994, the New York Supreme Court entered a judgment of divorce that embodied the stipulation. A week later, the Family Court issued a decision on Maurice's September 1993 petition for custody, finding that (1) New York was not the child's home state at the time Maurice commenced the action in that court, and (2) Iowa was the child's home state. Concluding it had no subject matter jurisdiction, the Family Court dismissed Maurice's custody petition.

When the judgment of divorce was entered, Karna and Isaiah resided in Iowa. The stipulation expressly stated that Karna resided in Iowa.

From June 1994 to October 1994, Isaiah was in New York with Maurice. From the end of October to mid-December 1994, Isaiah was with Karna in Iowa. From December 1994 until May 1995, the child was with Maurice in New York, and then with his mother in Iowa from June to September 1995.

In early September, Isaiah was with his father in New York. At this time, Isaiah entered kindergarten. In April 1996, Isaiah traveled with his father to the Philippines. They returned to New York, where Isaiah completed kindergarten in June 1996. After he completed kindergarten, Isaiah returned to Iowa with his mother.

Except for a visit with his father in New York from May to August of 1997, Isaiah lived continuously with Karna in Iowa from June 1996 to June 1998. The child completed first and second grades in Des Moines. On June 2, 1998, Maurice took Isaiah to New York. At the time of trial,

Isaiah was in New York, but he had not attended school in New York in over two years.

Isaiah received most of his medical care in Iowa, he was involved in school and church activities in Iowa, and he saw a counselor in Des Moines.

On January 14, 1998, Karna commenced the present action to modify the New York judgment of divorce. She asked the court to provide for (1) joint legal custody of Isaiah to the parties with primary physical care to Karna, (2) supervised visitation to Maurice, and (3) Maurice to pay child support to Karna. Maurice moved to dismiss the application, alleging lack of subject matter jurisdiction under the UCCJA. The district court, Judge Scott Rosenberg, overruled Maurice's motion to dismiss.

Following a hearing on Karna's modification application, Karna moved to amend to conform to the evidence. She contended the New York custody order was invalid because New York did not have subject matter jurisdiction to determine Isaiah's custody.

District Judge Robert A. Hutchison ruled that the Iowa district court had jurisdiction to modify the New York custody order. The court declined to rule on Karna's motion to conform to evidence. Instead, the court assumed—for the purposes of its ruling—that the New York judgment of divorce was valid in all respects and that the New York court had subject matter jurisdiction to enter the custody order. The court then modified the New York judgment of divorce, placing primary physical care of Isaiah with Karna and providing for a schedule of visitation for Maurice. The court also ordered Maurice to pay Karna child support in the amount of $345.39 per month.

On appeal, Maurice contended the district court erred in failing to conclude that it lacked subject matter jurisdiction to hear the custody dispute under Iowa's UCCJA. He also asserted that the child custody jurisdictional provisions of 28 U.S.C. § 1738A (1994), the Parental Kidnapping Prevention Act (PKPA), had not been satisfied, thereby additionally precluding the district court from proceeding to the merits of the case.

The court of appeals first ruled that the New York Supreme Court had jurisdiction to enter the custody order because the parties had agreed that the New York court should decide the issue of Isaiah's custody. The court concluded that Iowa may have been Isaiah's home state under Iowa Code sections 598A.2 and .3 at the time Karna filed her application to modify the New York custody order. The court nevertheless concluded that this was insufficient to confer jurisdiction on the Iowa district court to modify the custody order. Rather, the court determined that the jurisdictional requirements in Iowa Code section 598A.14, the continuing jurisdiction provision, applied and had not been satisfied. For this reason, the court dismissed the case.

We granted Karna's application for further review. The sole issue on further review is whether the district court had subject matter jurisdiction to modify the New York custody order.

## II. Jurisdiction of the Iowa District Court.

■ The UCCJA and the PKPA set forth the jurisdictional requirements with regard to a custody determination. Whether those jurisdictional requirements have been met is a question of subject matter jurisdiction. *St. Clair v. Faulkner*, 305 N.W.2d 441, 445 (Iowa 1981). The question whether a court has subject matter jurisdiction may be raised at any time and is not waived even by consent. *Id.* We

determine subject matter jurisdiction issues even though the parties have not raised them. *Id.* Additionally, we examine the grounds for subject matter jurisdiction on our own motion before we proceed further. *Id.* When we determine subject matter jurisdiction is lacking, the only appropriate disposition is to dismiss the custody petition. *Id.*

### III. Scope of Review.

■ We give de novo review to questions of subject matter jurisdiction under the UCCJA and the PKPA however the issue comes before us. *Id.*

### IV. Background.

Because this is an interstate custody dispute involving the UCCJA and the PKPA, we must initially determine whether the district court had subject matter jurisdiction to modify the New York custody order under both Acts. Before proceeding to the merits, we think some background discussion about how both statutes operate would be helpful in understanding this opinion.

**A. Full faith and credit regarding custody orders.** Article IV, section 1, of the Federal Constitution requires that each state give "Full Faith and Credit" to the "public Acts, Records, and judicial Proceedings of every other State," and authorizes Congress to "prescribe the Manner in which such Acts, Records and proceedings shall be proved, and the Effect thereof." U.S. Const. Art. IV, § 1. However, "custody orders [have] held a peculiar status under the full faith and credit doctrine." *Thompson v. Thompson,* 484 U.S. 174, 180, 108 S.Ct. 513, 516, 98 L.Ed.2d 512, 520 (1988). Because "custody orders characteristically are subject to modification as required by the best interests of the child ... some courts [have] doubted whether custody orders were sufficiently

'final' to trigger full faith and credit requirements." *Id.*

However,

[e]ven if custody orders were subject to full faith and credit requirements, the Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the courts of the State in which the judgment was entered. Because courts entering custody orders generally retain the power to modify them, courts in other States were no less entitled to change the terms of custody according to their own views of the child's best interest. For these reasons a parent who lost a custody battle in one State had an incentive to kidnap the child and move to another State to relitigate the issue. This circumstance contributed to widespread jurisdictional deadlocks ... and more importantly to a national epidemic of parental kidnapping.

*Id.* at 180, 108 S.Ct. at 517, 98 L.Ed.2d at 521 (citations omitted).

"[I]n an effort to avoid these jurisdictional conflicts," many states joined in the adoption of the UCCJA. *Id.* at 181, 108 S.Ct. at 517, 98 L.Ed.2d at 521. "The UCCJA was the first attempt at a comprehensive response to this problem and was meant, in part, to promote cooperation between the states and avoid jurisdictional competition and conflict between state courts in child custody matters." *Holm v. Smilowitz,* 83 Ohio App.3d 757, 768, 615 N.E.2d 1047, 1054 (1992). The UCCJA was a "legislative response[ ] to problems with 'interstate child snatching' by parents seeking a favorable custody award in the forum of their choice thereby leading to 'jurisdictional deadlocks' among the states and a 'national epidemic of parental kidnapping.'" *Id.* To alleviate these problems, "[t]he UCCJA prescribed uniform standards for deciding which State could

make a custody determination and obligated enacting States to enforce the determination made by the State with proper jurisdiction." *Thompson,* 484 U.S. at 181, 108 S.Ct. at 517, 98 L.Ed.2d at 521.

**B. Iowa and the UCCJA.** Iowa adopted the UCCJA in substantial form in 1977. *See* 1977 Iowa Acts ch. 139. Iowa's version of the UCCJA is codified in Iowa Code chapter 598A. The stated purposes of chapter 598A mirror those of the UCCJA and are found in Iowa Code section 598A.1. At the time the present modification proceedings began, the Iowa Code provided that "[a]ll orders relating to custody of a child are subject to chapter 598A." Iowa Code § 598.21(6).

Iowa Code section 598A.13 sets out the standards for determining when the courts of this state must recognize out-of-state custody decrees. It provides:

> The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter, or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

Iowa Code § 598A.13.

Iowa Code section 598A.3 provides four alternative bases for conferring subject matter jurisdiction in a child custody dispute. They can be summarized as (1) home state jurisdiction, (2) best-interest and significant-connection jurisdiction, (3) emergency jurisdiction, and (4) a catchall provision allowing a court to exercise jurisdiction if no other state would have jurisdiction under the first three types of jurisdiction *or* if another state with jurisdiction had declined to exercise its jurisdiction. *See* Iowa Code § 598A.3.

**C. Problems with the UCCJA.** As it turned out, the UCCJA provided an imperfect remedy. *Wilson v. Gouse,* 263 Ga. 887, 888, 441 S.E.2d 57, 59 (1994). As the United States Supreme Court has explained:

> The project foundered, however, because a number of States refused to enact the UCCJA while others enacted it with modifications. In the absence of uniform national standards for allocating and enforcing custody determinations, noncustodial parents still had reason to snatch their children and petition the courts of any of a number of haven States for sole custody.

*Thompson,* 484 U.S. at 181, 108 S.Ct. at 517, 98 L.Ed.2d at 521.

> As one court similarly expressed,

> a number of states adopted differing versions of the [UCCJA] or gave varying interpretations of its requirements. This led to the rise of concurrent jurisdiction in several states, which, in turn, engendered further state conflict and encouraged forum shopping.

*Holm,* 615 N.E.2d at 1054 (citation omitted).

**D. The PKPA.** In an effort to remedy these continuing full-faith-and-credit problems, Congress enacted the PKPA of 1980. *See Thompson,* 484 U.S. at 181, 183, 108 S.Ct. at 517, 518, 98 L.Ed.2d at 521, 522 (concluding that "[t]he context of the PKPA ... suggests that the principal problem Congress was seeking to remedy was the inapplicability of full faith and credit requirements to custody determinations" and that "Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations").

Congress designed the PKPA to promote "interstate cooperation, interstate enforcement of custody decrees and the avoidance of jurisdictional competition and conflict." *Holm*, 615 N.E.2d at 1054. The PKPA "put[s] in place a uniform federal statute which provides clear guidelines for determining jurisdiction over interstate child custody disputes." *Wilson*, 441 S.E.2d at 60; *see also Shute v. Shute*, 158 Vt. 242, 246, 607 A.2d 890, 893 (1992) ("The PKPA established national standards for determining subject matter jurisdiction over custody matters."). A court should consider the PKPA whenever it must decide " 'which of two or more states has jurisdiction to decide a custody dispute.' " *McDow v. McDow*, 908 P.2d 1049, 1052–53 (Alaska 1996) (quoting *Greenlaw v. Smith*, 123 Wash.2d 593, 604, 869 P.2d 1024, 1031 (1994)).

"The PKPA imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if that determination was made consistently with the provisions of the Act." *Thompson*, 484 U.S. at 175–76, 108 S.Ct. at 514, 98 L.Ed.2d at 517–18.

To be consistent with the provisions of the PKPA, a "State must have jurisdiction under its own local law and one of five conditions set out in section 1738A(c)(2) must be met." *Id.* at 176–77, 108 S.Ct. at 515, 98 L.Ed.2d at 518; *see* 28 U.S.C. § 1738A(c).

> Briefly put, these conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused.

*Thompson*, 484 U.S. at 177, 108 S.Ct. at 515, 98 L.Ed.2d at 518; *see* 28 U.S.C. § 1738A(c)(2).

Where a State has exercised jurisdiction consistently with the provisions of the PKPA,

> no other State may exercise concurrent jurisdiction over the custody dispute . . . even if it would have been empowered to take jurisdiction in the first instance and all States must accord full faith and credit to the first State's ensuing decree.

*Thompson*, 484 U.S. at 177, 108 S.Ct. at 515, 98 L.Ed.2d at 518–19 (footnote omitted).

However, 28 U.S.C. § 1738A(f) provides an exception to this uniform rule of enforcement. *See Thompson*, 484 U.S. at 177 n. 2, 108 S.Ct. at 515 n. 2, 98 L.Ed.2d at 518 n. 2. Under 28 U.S.C. § 1738A(f),

> [a] court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A(f).

The jurisdictional requirements of the PKPA and the UCCJA are essentially the same, with one crucial exception: "[T]he PKPA prefers home state jurisdiction over significant connection jurisdiction." *J.D.S. v. Franks*, 182 Ariz. 81, 88, 893 P.2d 732, 739 (1995). We recognized the similarity of the PKPA with Iowa Code chapter 598A in *In re Guardianship of T.H.*, 589 N.W.2d 67, 68 (Iowa 1999). In that case, we acknowledged that both "cover the same ground and proceed from the same premise." *T.H.*, 589 N.W.2d at 68. That premise is that "a state court should

not modify the decree of another state unless the other state no longer retains jurisdiction in the matter." *Id.*

We also have acknowledged the preemptive nature of the PKPA with respect to state law in determining "when jurisdiction may be exercised in interstate custody matters." *In re Marriage of Leyda,* 398 N.W.2d 815, 819 (Iowa 1987). That the jurisdictional requirements of the PKPA preempt state law, at least when there is a conflict, apparently remains the consensus on this matter. *See, e.g., Rogers v. Rogers,* 907 P.2d 469, 471 (Alaska 1995); *In re Adoption of Child by T.W.C.,* 270 N.J.Super. 225, 233, 636 A.2d 1083, 1088 (1994); *In re A.E.H.,* 161 Wis.2d 277, 320, 468 N.W.2d 190, 208 (1991).

■ In exercising initial jurisdiction, a state need not comply with the PKPA. *See J.D.S.,* 893 P.2d at 739; Anne B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act,* 25 U.C. Davis L.Rev. 845, 925 (1992) (stating that, as a federal law, the PKPA does not grant or withhold jurisdiction, but only specifies which state decrees are entitled to enforcement). A state, however, as a practical matter, must comply with the PKPA if it wishes other states to give full faith and credit, by virtue of federal statutory law, to its custody decree. *J.D.S.,* 893 P.2d at 739. This has been referred to as the "coercive effect of the PKPA on the jurisdictional choices" available to states. *Columb v. Columb,* 161 Vt. 103, 107, 633 A.2d 689, 692 (1993). As the court in *Columb* explained:

> [A] home state custody order issued in direct conflict with a Vermont order [issued without the full-faith-and-credit protection of the PKPA] would be entitled to full faith and credit in other states and, by virtue of the PKPA, *in*

*Vermont.* Thus, if Vermont moves to assert jurisdiction when its order is not entitled to full faith and credit, the mother has every incentive to start a proceeding in Utah and refuse to comply with any Vermont order. To ignore these realities is likely to entangle this child in a web of proceedings satisfactory to no one.

*Id.*

For these reasons, the court in *Columb* concluded:

> Although the PKPA does not preempt the UCCJA [in initial custody determinations], we construe the UCCJA consistent with the policies of the PKPA to avoid any conflict. The practical significance of this holding is that the home-state preference of the PKPA applies in initial custody determinations as well as in modification or enforcement proceedings involving the courts of more than one state. If a child has a home state other than Vermont at the relevant time periods, ordinarily the Vermont courts will lack subject matter jurisdiction over the custody proceeding.

*Id.* at 693.

## V. Does the PKPA Apply in This Case?

We must determine whether the PKPA applies in this case. If we conclude the PKPA does not apply, Iowa is not required *under the PKPA* to give New York's custody order full faith and credit.

As mentioned, the PKPA provides that

> [t]he appropriate authorities of every State shall enforce according to its terms, and shall not *modify* except as provided in subsection (f) of this section, *any child custody determination made*

*consistently with the provisions of this section by a court of another State.*

28 U.S.C. § 1738A(a) (emphasis added).

**A. Whether the dispute involves an initial decree or modification of an existing decree.** The italicized language makes clear that the application of the PKPA hinges on two questions. First, does the dispute involve an initial custody order or modification of an existing custody order?

■ As mentioned, the PKPA only governs the enforceability of one state's custody order in another state and the other state's power to modify that order. The Act does not "purport to control jurisdiction to issue an initial order." *Columb*, 633 A.2d at 692; *see also J.D.S.*, 893 P.2d at 739 ("A state need not comply with the PKPA to exercise initial jurisdiction."); *Holm*, 615 N.E.2d at 1053 (holding that PKPA is controlling only when there is a conflict between states); *In re Marriage of Murphy*, 90 Wash.App. 488, 495, 952 P.2d 624, 628 (1998) ("If a custody decree does not already exist ... the [PKPA] has no application."); *In re Marriage of Davidson*, 169 Wis.2d 546, 555, 485 N.W.2d 450, 453 (Wis.Ct.App.1992) (holding that "compliance with the PKPA will not become an issue in a Wisconsin court unless a child custody determination by a court of another state is attacked or sought to be modified in a Wisconsin court"; court concluded that, because proceeding was an initial custody proceeding rather than a modification proceeding, state law, not the PKPA, was controlling).

The present dispute satisfies the first question because the dispute involves the modification of an existing order, not the issuance of an initial custody order.

**B. Whether the New York custody order was made consistently with the provisions of the PKPA.** The second question is whether the existing New York custody order was made consistently with the provisions of the PKPA. This determination is necessary because whether a state's "child custody determination" is consistent with the provisions of the PKPA is "a precondition to [the] Act's direction that the determination not be modified by any other state." *In re Marriage of Michalik*, 164 Wis.2d 544, 551, 476 N.W.2d 586, 589–90 (Wis.Ct.App.1991); *see also Glanzner v. State*, 835 S.W.2d 386, 391 (Mo.Ct.App.1992) ("Under the PKPA, California would be required to give full faith and credit to the Missouri decree because the Missouri proceedings comply with the PKPA.").

■ Therefore, if a custody order was not entered consistently with the PKPA, such order would not *under the PKPA* be entitled to full faith and credit in another state. *See Atkins v. Atkins*, 308 Ark. 1, 3, 823 S.W.2d 816, 819 (1992) ("[I]f a custody decree fails to conform to the requirements of the PKPA, it will not be entitled to full faith and credit in another state.").

Was the New York custody order entered consistently with the terms of the PKPA? A child custody determination made by a court of a state is consistent with the provisions of the PKPA only if

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interests of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C. § 1738A(c); *see Matthews,* 649 A.2d at 235 ("Under subsection (c) of the Act, a custody determination is consistent with the PKPA if two requirements are fulfilled. First, the issuing court must have jurisdiction under state law.... Second, one of the five conditions listed in PKPA subsection (c)(2) must be met.").

For purposes of our analysis, we will assume that when Maurice filed for divorce in November 1993, the New York Supreme Court had subject matter jurisdiction under its own laws to enter the custody order. (Later in this opinion, we find such jurisdiction was lacking.) However, for reasons that follow, we find that, when Maurice filed for divorce in November 1993, none of the five conditions listed in PKPA subsection (c)(2) were met.

The PKPA defines "home State" to mean "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months.... Periods of temporary absence of any of such persons are counted as part of the six-month or other period." 28 U.S.C. § 1738A(b)(4).

■ As mentioned, in January 1993, following a period of marital difficulty, Karna and Isaiah moved to Iowa. Except for two visits to Maurice from May 4, 1993, to June 6, 1993, and from August 15, 1993, to September 24, 1993, Isaiah remained in Iowa with Karna until June 1994. Additionally, the stipulation that the parties executed on May 8, 1994, states that Karna was residing at 2555–53rd Ct., Des Moines, Iowa. Therefore, Isaiah resided in Iowa approximately ten months before Maurice filed for divorce in New York in November 1993. We find that Iowa, not New York, was Isaiah's home state at the time Maurice filed for divorce in November 1993.

Further support for our finding is the Family Court's decision filed a week after the divorce decree was entered. The Family Court found that Iowa, not New York, was the child's home state when Maurice filed a petition for custody in September 1993. Nothing occurred between September 1993 and November 1993, when Maurice filed for divorce, to change that status.

For these reasons, we conclude the New York custody order does not satisfy the "home state" condition of subsection (c)(2)(A) because New York was not Isai-

ah's home state "at the commencement of the proceeding."

Nor does (c)(2)(B) apply. This subsection essentially provides that a custody order is consistent with the PKPA if, in entering the decree, the best interests of the child demanded that the decretal state assume jurisdiction because, among other things, the child and a contestant had "significant connection" with the decretal state. However, subsection (c)(2)(B) applies only when "it appears that no other state would have jurisdiction under [subsection (c)(2)(A).]"—the home state requirement. 28 U.S.C. § 1738A(c)(2)(B)(i). As mentioned, Iowa, not New York, was Isaiah's home state when Maurice filed for divorce in November 1993.

Nor is the condition in subsection (c)(2)(C) satisfied. There is nothing in the record to suggest that Isaiah had been "abandoned" or that he "had been subjected to or threatened with mistreatment or abuse."

We are left with subsections (c)(2)(D) and (E). According to subsection (c)(2)(D), a child custody determination by a court of a State is consistent with the PKPA if

> (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction.

28 U.S.C. § 1738A(c)(2)(B). This subsection does not apply because a state other than New York, *i.e.*, Iowa, was Isaiah's home state. Nor had a state declined jurisdiction on the ground that New York was the more appropriate forum to determine custody of Isaiah.

Obviously, subsection (c)(2)(E) does not apply because this provision only applies in situations in which a court has already entered a custody order and a party seeks to modify that custody order in another state. The New York custody order was an initial custody order.

Because none of the conditions in 28 U.S.C. § 1738A(c)(2) has been met, we conclude the New York decree was not a child custody determination made consistent with the provisions of the PKPA. For that reason, the provisions of the PKPA, which require Iowa to give full faith and credit to the New York custody order, do not apply. Therefore, the Iowa district court here was not required by the PKPA to give the New York custody order full faith and credit.

## VI. Does Iowa Law Require the Iowa District Court to Give the New York Custody Order Full Faith and Credit?

■ Although the PKPA does not require the Iowa district court to accord full faith and credit to the New York custody order, that does not necessarily mean the Iowa district court is free to ignore it or not to enforce it. Whether the Iowa district court is permitted to do either still depends on state law. As one court noted,

> [h]aving concluded that neither the Full Faith and Credit Clause nor the provisions of the [PKPA] foreclosed the exercise of jurisdiction by the district court in Wyoming, *we still must consider whether the exercise of that jurisdiction was precluded under some provision of Wyoming law.*

*Quenzer v. Quenzer,* 653 P.2d 295, 301 (Wyo.1982) (emphasis added); *see Davidson,* 485 N.W.2d at 453 (upon concluding that the PKPA did not apply to initial custody proceeding, court turned to state

law to determine jurisdiction to hear inter-state custody dispute).

As mentioned, at the time the present modification proceedings began, Iowa Code section 598.21(6) provided that "[a]ll orders relating to custody of a child are subject to chapter 598A," Iowa's version of the UCCJA. "It is therefore necessary that all jurisdictional requirements under chapter 598A be met where that chapter is applicable to a proceeding to modify a custody decree." *Pierce v. Pierce*, 287 N.W.2d 879, 882 (Iowa 1980). Clearly, chapter 598A applies to Karna's application to modify the New York custody order.

As we also mentioned, Iowa Code section 598A.13 governs whether the Iowa district court was required to give the New York custody order full faith and credit. *See O'Neal v. O'Neal*, 329 N.W.2d 666, 667 (Iowa 1983). Iowa Code section 598A.14 governs the district court's authority to *modify* an out-of-state custody decree. *Id.*

Iowa Code section 598A.13 provides:

The courts of this state shall recognize and enforce an *initial* or modification decree of a court of another state *which has assumed jurisdiction under statutory provisions substantially in accordance with this chapter*, or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

Iowa Code § 598A.13 (emphasis added).

 Whether the Iowa district court must recognize and enforce an out-of-state custody order pursuant to section 598A.13 depends on a finding from the evidence that the other state had subject matter jurisdiction to enter the original decree. *See O'Neal*, 329 N.W.2d at 667–

69; *see also In re Adoption of C.L.W.*, 467 So.2d 1106, 1109 (Fla.Dist.Ct.App.1985) (interpreting statute identical in language to Iowa Code section 598A.13); *In re Wilber*, 136 A.D.2d 786, 787, 523 N.Y.S.2d 249, 250 (1988) (same). This determination in turn depends on whether the other state, here, New York, acquired subject matter jurisdiction according to the UCCJA as adopted by that state. *See D.B. v. P.B.*, 692 So.2d 856, 860 (Ala.Civ.App.1997) (holding that pursuant to UCCJA, Alabama court must recognize and enforce valid custody judgment of another state; only if foreign court did not have jurisdiction under its own law to decide issue of custody is its judgment not entitled to full faith and credit); *C.L.W.*, 467 So.2d at 1110. Therefore, we must decide whether the New York court acquired subject matter jurisdiction to determine custody according to the UCCJA as adopted by New York. In short, whether New York had jurisdiction depends on New York law.

At the time the New York custody order was entered, the UCCJA was in effect in New York. *See* N.Y. Dom. Rel. Law §§ 75a–75z (McKinney 1988). Its version is substantially similar to Iowa's. As mentioned, Iowa Code section 598A.3 governs the jurisdiction of the district court to decide child custody matters. The New York counterpart to Iowa Code section 598A.3 is New York Domestic Relations Law section 75–d. Section 75–d is identical to section 598A.3. Therefore, New York has subject matter jurisdictional "provisions substantially in accordance with" the provisions of chapter 598A. Additionally, the New York custody order has not been modified.

However, we find, for reasons that follow, that the New York court could not have assumed jurisdiction under New York law at the time Maurice filed his divorce action in November 1993. For that rea-

son, the Iowa district court was not required to recognize and enforce the New York custody order. We therefore do not reach the issue of the district court's jurisdiction to modify the New York custody decree pursuant to Iowa Code section 598A.14.

New York Domestic Relations Law section 75–d provides:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by *initial* or modification decree if:

(a) this state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state, and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

2. Except under paragraphs (c) and (d) of subdivision one of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

N.Y. Dom. Rel. Law § 75–d (emphasis added).

New York Domestic Relations Law section 75–c(5) provides in part:

"Home state" means the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as a parent, for at least six consecutive months. . . .

N.Y. Dom. Rel. Law § 75–d. Iowa Code section 598A.3 defines "home state" in substantially the same way.

Section 75–d(1)(a), (c), and (d) of the New York Domestic Relations Law is substantially similar in language to section 1738A(c)(2)(A), (C), and (D) of the PKPA. Additionally, the definition of "home state" in the New York Domestic Relations Law is substantially similar to the definition of "home state" in the PKPA. Our previous analysis under the PKPA leads us to conclude that, under New York law, Iowa not New York was Isaiah's home state when Maurice filed for divorce in November 1993. Additionally, that analysis leads us

to conclude that the provisions of section 75–d(1)(a), (c), and (d) of the New York law were not met when Maurice filed for divorce.

That leaves for our consideration section 75–d(1)(b), the "significant connection" provision. The only difference between this provision and its counterpart in the PKPA is the additional language "it appears that no other State would have jurisdiction under [the home state provision]" found in subsection (c)(2)(B) of the PKPA. The New York courts generally appear to agree that, in an initial custody dispute, the child's "home state" has exclusive jurisdiction when the "significant connection" provision in section 75–d(1)(b) is relied on to establish jurisdiction. *See, e.g., Warshawsky v. Warshawsky,* 226 A.D.2d 708, 709, 641 N.Y.S.2d 877, 879 (1996); *Perri v. Mariarossi,* 172 A.D.2d 671, 672, 568 N.Y.S.2d 637, 638 (1991); *Michael P. v. Diana G.,* 156 A.D.2d 59, 64–65, 553 N.Y.S.2d 689, 692–93 (1990); *see also Hahn v. Rychling,* 258 A.D.2d 832, 835–36, 686 N.Y.S.2d 136, 140 (1999) (Mikoll, J.P., dissenting). This is because the language "it appears that no other State would have jurisdiction under [the home state provision]" found in subsection (c)(2)(b) of the PKPA is given preemptive effect over the jurisdictional options available under New York Domestic Relations Law section 75–d(1) by virtue of the Supremacy Clause of the Federal Constitution. *See Michael P.,* 156 A.D.2d at 64–65, 553 N.Y.S.2d at 692–93. Because, according to New York law, the PKPA preempts the "significant connection" provision in section 75–d(1)(b), that provision is not available in an original custody dispute as a basis for jurisdiction if there is another home state. *Id.*

We conclude that under New York's UCCJA and the interpretation given to it by the New York courts, the New York Supreme Court did not have subject matter jurisdiction to determine Isaiah's custody. (Subsequent to the commencement of these proceedings, the Iowa legislature repealed Iowa Code chapter 598A, *see* 1999 Iowa Acts ch. 103, § 47, and adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* 1999 Iowa Acts ch. 103. The initial custody jurisdiction provisions of the UCCJEA track the language of the PKPA. Specifically, the UCCJEA allows a court to assume jurisdiction in an initial child custody determination on the basis of significant connection only if the child has no home state. *See* Unif. Child Custody Jurisdiction & Enforcement Act § 201, 9 U.L.A. 671 (1999) (codified at Iowa Code § 598B.201 (Supp.1999)).)

Apart from this analysis, we think there is an additional reason to support our conclusion that the New York Supreme Court did not have subject matter jurisdiction to determine Isaiah's custody. The New York divorce judgment notes that Karna was in default. The court made no findings that it had subject matter jurisdiction under New York's UCCJA to determine Isaiah's custody. So essentially we have a default decree with no finding that the court had subject matter jurisdiction under New York's UCCJA to determine Isaiah's custody.

In these circumstances, we conclude the New York court did not assume jurisdiction over the custody determination in substantial conformity with the provisions of its UCCJA. *See* Iowa Code § 598A.13. Because the New York court had not properly assumed jurisdiction, the Iowa district court was not required to recognize and enforce the New York custody order pursuant to Iowa Code section 598A.13. *See Brewington v. Serrato,* 77 N.C.App. 726, 336 S.E.2d 444, 447 (1985) (applying the same reasoning).

■ The fact that Karna was a party to the divorce action and a party to the stipulation regarding custody does not alter our conclusion that the New York Supreme Court lacked subject matter jurisdiction to determine custody. The parties cannot confer, or consent to, such jurisdiction. *See St. Clair*, 305 N.W.2d at 445; *see also In re Marriage of Newsome*, 68 Cal. App.4th 949, 956, 80 Cal.Rptr.2d 555, 559 (1998) ("Subject matter jurisdiction either exists or does not exist at the time the action is commenced. There is no provision in the UCCJA for jurisdiction by reason of presence of parties or by stipulation or consent." (Citation omitted.)); *Muller v. Muller*, 43 Conn.App. 327, 333, 682 A.2d 1089, 1092 (1996) (rejecting argument that, in agreeing to a stipulation regarding visitation, parties implicitly consented to the exercise of subject matter jurisdiction; holding that "[o]nly the enabling legislation, in this case the UCCJA, can confer subject matter jurisdiction"); *Murphy*, 952 P.2d at 628 (holding that former wife's stipulation to jurisdiction in dissolution proceedings in another state did not establish that state's subject matter jurisdiction under the UCCJA and did not oblige trial court to give full faith and credit to the custody provision of the dissolution decree entered by the foreign state); *Gomez v. Gomez*, 86 A.D.2d 594, 595, 446 N.Y.S.2d 127, 129 (1982) (holding in UCCJA proceeding that "subject matter jurisdiction is not waivable").

The Family Court's decision is an additional reason supporting our conclusion that the New York Supreme Court did not have subject matter jurisdiction to determine custody. The Family Court determined it did not have such jurisdiction at the time Maurice filed for custody in September 1993. The Family Court reached its conclusion after a thorough analysis under New York's UCCJA. Although the Family Court's decision was not rendered until a week after the judgment of divorce and custody order, the decision was the only New York determination in this case on custody under the New York UCCJA. There were no facts between September 1993, when Maurice petitioned for custody in the New York Family Court, and November 1993, when he filed for divorce in the New York Supreme Court, to alter that determination. Therefore, if the New York courts did not have subject matter jurisdiction in September 1993, those courts certainly did not have it when Maurice commenced the divorce action two months later. Maurice did not appeal from that ruling, so it was binding on him.

## VII. Did the Iowa District Court Have Subject Matter Jurisdiction to Make a Custody Determination?

■ Because the New York Supreme Court did not have subject matter jurisdiction, we are not required by Iowa law to give its decree full faith and credit. Thus, what we have here is in essence a request by Karna to make an initial custody determination. The question is whether the Iowa district court has jurisdiction to make such a determination. *See O'Neal*, 329 N.W.2d at 669 (following refusal to recognize and enforce Arizona custody decree pursuant to Iowa Code section 598A.13, this court proceeded to determine whether the Iowa district court had subject matter jurisdiction to make custody determination). Whether the Iowa district court has jurisdiction to make an initial custody determination depends on whether any of the provisions of Iowa Code section 598A.3 are satisfied.

■ For reasons that follow, we find the Iowa district court does have subject matter jurisdiction to make an initial custody determination based on the "home

state" provision found in Iowa Code section 598A.3, which provides:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child-custody determination by initial or modification decree if:

a. This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state.

Iowa Code § 598A.3.

The Iowa Code defines "home state" to mean

the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Iowa Code § 598A.2(5).

Isaiah lived in Iowa from June 16, 1996, through the filing of the application to modify on January 14, 1998, interrupted only by a single, seventy-seven-day visit with Maurice in the summer of 1997. We find this visit fits within the "temporary absence" exception to the six-consecutive-month requirement in section 598A.2(5). Furthermore, Karna has continued to live in this state throughout these proceedings. We therefore find that the Iowa district court had subject matter jurisdiction to make a custody determination because, at the time Karna filed the application to modify on January 14, 1998, Iowa was Isaiah's home state and because Karna has continued to live in Iowa.

As mentioned, what we now have is an *initial* custody determination because we are not affording full faith and credit to the New York custody order. The district court proceeded on the basis it was modifying the New York custody order. It therefore considered whether there had been a substantial change in circumstances as well as the best interests of the child. *See In re Marriage of Hunnell,* 398 N.W.2d 877, 878 (Iowa 1987). In making an initial custody determination, however, the district court employs only a best-interests-of-the-child standard. *See In re Marriage of Will,* 489 N.W.2d 394, 397 (Iowa 1992). Therefore, the district court here employed a stricter standard than was necessary, so there was no prejudice to Maurice. After very detailed findings, the court found that Isaiah's best interests required that Karna be the primary caretaker of the child.

In his appeal, Maurice does not challenge the standard the district court employed or the merits of the court's best-interests determination. His only complaint is that the district court lacked subject matter jurisdiction to make a custody determination. For these reasons and because the district court had subject matter jurisdiction pursuant to Iowa Code section 598A.3 to make a custody determination, we will not determine custody anew. The district court's decision on that issue stands.

## VIII. Disposition.

In sum, we conclude that the New York custody order did not conform to the provisions of the PKPA. Therefore, the Iowa district court was not required to give the New York custody order full faith and credit under that statute. We further conclude the New York Supreme Court did not have subject matter jurisdiction to

make the custody determination in this case. For that reason, Iowa Code section 598A.13 did not require the Iowa district court to recognize and enforce the New York custody order. Finally, we conclude the Iowa district court had subject matter jurisdiction pursuant to Iowa Code section 598A.3 to make a custody determination, a determination that we elect not to disturb.

Accordingly, we vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**